1  EVAN R. MOSES, CA, Bar No. 198099
   evan.moses@ogletree.com
2  ALEXANDER M. CHEMERS, CA Bar No. 263726
   alexander.chemers@ogletree.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
5  Telephone:     213-239-9800
   Facsimile:     213-239-9045
6
   Attorneys for Defendant
7  FEDEX GROUND PACKAGE SYSTEM, INC.

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  ERNEST CUADRA, on behalf of himself and      Case No.  4:20-cv-2089
    others similarly situated,
12                                               **DEFENDANT'S NOTICE OF REMOVAL
                   Plaintiff,                    OF CIVIL ACTION TO FEDERAL COURT
13                                               PURSUANT TO 28 U.S.C. §§ 1332, 1441,
            v.                                   1446 AND 1453**
14
    FEDEX GROUND PACKAGE SYSTEM,                 [Filed concurrently with Declarations of Andrea
15  INC., a Delaware corporation; FEDEX, a       K. Cox and Alexander Chemers, Certification of
    business entity unknown; and DOES 1 to 100,  Interested Entities or Persons, and Civil Case
16  Inclusive,                                   Cover Sheet]
17                 Defendant.
                                                 Complaint Filed:  December 3, 2019
18                                               Trial Date:
19

20

21

22

23

24

25

26

27

28

                                                 Case No.  4:20-cv-2089

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendant FedEx Ground Package System, Inc. ("Defendant") removes this action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

## I.   THE STATE COURT ACTION

1.      On December 3, 2019, plaintiff Ernest Cuadra filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Ernest Cuadra, on behalf of himself and others similarly situated, Plaintiff v. FedEx Ground Package System, Inc., a Delaware Corporation; FedEx, a business entity unknown; and Does 1 to 100, inclusive, Defendants*, which was assigned case number RG19045340 (the "State Court Action"). The Complaint asserts claims for: (1) Failure to Pay Minimum Wage or Overtime Wages in violation of the California Labor Code §§ 510, 1194, 1197, 1198, and the Wage Orders; (2) Failure to Provide all Legally Required and Compliant Meal Periods in violation of California Labor Code § 226.7; 512, 198 and the Wage Orders; (3) Failure to Provide all Legally Required and Compliant Rest Periods in violation of California Labor Code § 226.7, 1198 and the Wage Orders; (4) Failure to Provide Complete and Accurate Wage Statements in violation of California Labor Code § 226; (5) Failure to Timely Pay Unpaid Wages Due At Time of Separation of Employment in violation of California Labor Code §§ 201, 202 and 203; and (6) Unfair Business Practices in Violation of Business and Professions Code Section 17200, *et seq.*

2.      On February 24, 2020, Defendant, through its counsel of record, signed a Notice and Acknowledgment of Receipt-Civil, acknowledging receipt of the Complaint, as well as other documents filed in the State Court Action.  Declaration of Alexander M. Chemers ("Chemers Decl.") ¶ 2.  A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

3.      As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action.  True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal.  Defendant has not been served with any pleadings, process, or orders besides those attached.  Chemers Decl., ¶ 3.

4.      For unknown reasons, Plaintiff names "FEDEX" separately from FedEx Ground Package System, Inc., which is the only appropriately named defendant in this case.

5.      Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6.      <u>This Notice is Timely</u>. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of the service upon Defendant.[1]  28 U.S.C. § 1446(b); *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## II.      <u>JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

7.      This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.      <u>The Size of the Putative Class Exceeds 100</u>

8.      In the Complaint, Plaintiff defines the proposed class as: "All current and former non-exempt warehouse employees required to pass through [Defendant's] mandatory security checks employed in California at any time within the four years prior to the filing of the initial

---

[1] Pursuant to Section 415.30(c) of the California Code of Civil Procedure, "[s]ervice of a summons . . . is deemed complete on the date a written acknowledgement of receipt of summons is executed, if such acknowledgement thereafter is returned to the sender."  Thus, Plaintiff's Complaint was deemed served on February 24, 2020, the date that Defendant's counsel signed a Notice and Acknowledgment of Receipt-Civil.

Case No.  4:20-cv-2089

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL COURT ACTION TO FEDERAL COURT

complaint in this action and through the date notice is mailed to a certified class . . . ."  Ex. A, ¶ 27 (A).

9.      Defendant's employment records show that there are thousands of current and former employees who fall within Plaintiff's proposed class.  For example, plaintiff Ernest Cuadra alleged that he "was employed by [Defendant] in a non-exempt position within the 4 years prior to filing of the complaint."  Ex. A, ¶ 3.  Even if the proposed class is limited to only those persons holding the non-exempt warehouse "Full-Time Package Handler" or "Part-Time Package Handler" positions in California within the four-year period prior to the filing of this lawsuit, there would be at least 16,592 putative class members.  Declaration of Andrea K. Cox ("Cox Decl."), ¶ 9.

**B.      The Parties Are Diverse**

10.      Citizenship of Defendant.  Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Id.* at 1184.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination."  *Id.*

11.      At all times on or after the date this action was filed, defendant FedEx Ground Package System, Inc. has been a citizen of the states of Pennsylvania and Delaware.  Defendant has its principal place of business in Moon Township, Pennsylvania, as that is the location of its headquarters from which its officers direct, coordinate, and control its business operations.  Cox Decl., ¶¶ 3-6.  In addition, Defendant is incorporated in the State of Delaware.  *Id.*, ¶ 2.  Defendant is neither incorporated in California, nor does it have a principal place of business in California.  *Id.*, ¶¶ 2-6.  Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen

of Pennsylvania and Delaware, and not a citizen of California.[2]

12.   <u>Citizenship of Plaintiff and putative class members</u>.  For diversity purposes, an individual is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

13.   The Complaint alleges that "Plaintiff is and was domiciled and resident and citizen of California and a resident and citizen of California and was employed by [Defendant] in a non-exempt position within the four years prior to the filing of this complaint."  Ex. A, ¶ 3.  Likewise, Defendant's employment records confirm that throughout his employment with Defendant, Plaintiff lived in the State of California, including the home address that Plaintiff provided for payroll purposes and the addresses shown on Plaintiff's driver's license, which was issued by the State of California.  Cox Decl., ¶ 8.  Thus, Plaintiff is a citizen of the State of California.

14.   Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California.  *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).  Thus, even if Plaintiff was somehow a citizen of Pennsylvania or Delaware (and there is no evidence that he is), there is no possible way that the thousands of putative class members, all of whom worked in California (Ex. A, ¶ 17), were also citizens of Pennsylvania or Delaware.

15.   Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendant is a citizen of Pennsylvania and Delaware while Plaintiff, a putative class member, is a citizen of California.

**C.   <u>The Amount in Controversy Exceeds an Aggregate of $5,000,000</u>**

16.   Plaintiff has not alleged a specific amount in controversy in the Complaint.  In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the

---

[2] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

17.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

18.     While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

19.     As described further below, as well as in the concurrently filed declaration from Andrea K. Cox,[3] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

---

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely

1

### 1.   Defendant's Estimate of the Amount in Controversy

20.    In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged:  (1) unpaid minimum wages for work performed in excess of 40 hours in one workweek or in excess of 8 hours in one day;  (2) failure to provide legally required and legally compliant meal periods; and (3) failure to provide legally required and legally compliant rest periods.  Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) failure to pay overtime wages; (2) failure to provide complete and accurate wage statements; (3) failure to timely pay all wages owed upon termination and (4) unfair, unlawful, and harmful business practices.

21.    Defendant has also based its removal calculations on current and former employees who held the warehouse Package Handler position, rather than the broader class proposed by Plaintiff.  If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

### (a)   The Amount Placed in Controversy by the Minimum Wage Claim

22.    In his First Cause of Action, Plaintiff alleges that Defendant "failed to compensate these employees with wages at least at a minimum wage rate for all time worked . . . ." Ex. A, ¶ 12.

23.    Plaintiff further specifically alleges that Defendant failed to properly compensate Plaintiff and the putative class members as follows:

---

than not that the jurisdictional threshold of $5,000,000.00 is met");  *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

42298262_1.docx

Defendant required Plaintiff and other warehouse employees to go through security screening at the beginning of their shift, any time they left the premises during meal or rest breaks or returned from leaving the premises during meal or rest breaks, and at the end of their shift.  The time spent going through the security check included time that Plaintiff and other warehouse employees had to wait while other employees were also lined up to go through security screening and walking from the security screening location to the time clock or walking from the time clock to the security screening location.  Even though the security screening was a requirement by [Defendant], [Defendant] did not pay wages to Plaintiff or other warehouse employees for the time they waited in line or went through the security screening at the beginning of their shift, any time they left the premises during meal breaks or returned from leaving the premised [sic] during meal breaks, at the end of their shift, or the time spent walking from the security screening location to the time clock or walking from the time clock to the security screening location...[Defendant] did not pay any additional wages to Plaintiff or other warehouse employees for this time.

*Id.* at ¶ 11.  Thus, Plaintiff alleges that Defendant failed to compensate Plaintiff and the putative

class members for time worked on a daily basis.

24.     Labor Code Section 1194(a) provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

25.     Based on Defendant's records, the approximate number of current and former

employees who held the non-exempt positions of Full-Time Package Handler or Part-Time

Package Handler in California from March 6, 2019 to March 13, 2020 ("Applicable Period")[4] is at

least 16,592.  Cox Decl., ¶ 9.  The hourly rate of the putative class members was at least $12.00 per

hour during this period.[5]  *Id.*

---

[4] Certain Part-Time Package Handlers and Full-Time Package Handlers in California may have been included in previous class action settlements, including *Steven Hernandez v. FedEx Ground Package System, Inc.*, *et al.*, N.D. Cal, No. 3:17-cv-03763-JSC (settlement covering period through March 5, 2019).  Because these employees may have released claims that are asserted on their behalves in this litigation, Defendant has excluded from its calculations any periods that were covered by these previous settlements, and instead focused its calculations on the period starting March 6, 2019.  Cox Decl., ¶ 10.

[5] From January 1, 2019 through December 31, 2019, the hourly rate of pay for putative class members was at least $12.00 per hour.  Cox Decl., ¶ 11.  From January 1, 2020 through the present, the hourly rate of pay for putative class members has been at least $13.00 per hour.  *Id.*  For

26.     Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **$3,100,884** ($12 x 1 x 258,407).  The computation of the amount in controversy is based on a conservative calculation that the 16,592 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 258,407 weeks during the Applicable Period, that each putative class member earned a regular rate of $12.00 per hour, and that each putative class member incurred one hour of unpaid minimum wage for every week of work.[6]  Cox Decl., ¶¶ 9, 11.

27.     An estimate of one hour of unpaid wages for every week of work has been accepted by the federal courts as a reasonable and conservative figure.  *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (same).  This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked unpaid wages without being provided the requisite compensation.  *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

28.     Consequently, the amount placed in controversy by the Minimum Wage Claim is at least $3,100,884.

### (b)     The Amount Placed in Controversy by the Failure to Provide Required Meal Periods Claim

29.     In his Second Cause of Action, Plaintiff alleges that Defendant "failed to afford employees meal periods in compliance with the law" and "failed to pay Plaintiff and similarly situated employees one hour of pay at their regular rate of pay for each workday Plaintiff and

---

purposes of these calculations, Defendant has conservatively used the lowest hourly rate of $12.00. Again, Defendant's calculations exclusively rely on the time period starting March 6, 2019.

[6] In light of the Complaint's allegations that Defendant's purported failure to pay minimum wage and/or overtime wages for all time worked was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano v. Shaw Industries, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013).

employees did not receive all legally required and legally compliant meal periods."  Ex. A. ¶¶ 39-40.

        30.      Plaintiff further alleges the following:

> Defendant implemented policies which failed to provide Plaintiff and other current and former warehouse employees with all meal periods as required by and in compliance with the law, including fully duty free and timely meal periods. Warehouse employees were required to only take a thirty minute meal break but were also required to pass through security checks and/or wait in line for employees passing through security checks and/or walk between time clocks and security screening locations during their meal period if leaving/entering the premises during meal periods resulting in [Defendant] providing less than thirty minute meal break.  In addition, [Defendant] discouraged employees from taking a meal period off-premises by limiting an employees' ability to take a full 30 minute meal period off-premises by requiring the employees to pass through security checks during their meal period time if leaving/entering the premises during meal periods while continuing to limit their meal periods to only thirty minutes.

Ex. A, ¶ 38.

        31.      Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided.  *See Marlo v. United Parcel Serv., Inc.*, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).  Meal period claims are properly considered in determining the amount in controversy.  *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

        32.      When determining the amount placed in controversy by a plaintiff's allegations regarding a common "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of one meal period violation for every week of work is both reasonable and conservative.  *See Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from California district courts have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's calculation that proposed class members

missed one required meal period per week).

33.     Based on a review of Defendant's business records, 16,592 putative class members worked 258,407 workweeks during the Applicable Period and received a minimum hourly rate of $12.00 during that time.  Cox Decl. ¶¶ 9, 11.

34.     Based on a conservative analysis of a violation rate of only one (1) meal period violation per employee, per week, Defendant's calculation of Plaintiff's claim for failure to provide legally compliant meal periods is **$3,100,884**.  The computation of the amount in controversy is based on conservative calculations that the 16,592 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 258,407 weeks during the Applicable Period, that each putative class member earned a regular rate of $12.00 per hour, and that each putative class member incurred one missed meal period penalty per workweek.  Cox Decl., ¶¶ 9; 11.

35.     Consequently, the amount placed in controversy by the Meal Period Claim is $3,100,884.

(c)     **The Amount Placed in Controversy by the Failure to Authorize and Permit Rest Breaks Claim**

36.     In his Third Cause of Action, Plaintiff alleges that Defendant "failed to provide Plaintiff and other warehouse employees with uninterrupted duty free 10 minute rest periods for each four hours or major fraction thereof worked" and "failed to pay Plaintiff and similarly situated employees one hour of pay at their regular rate of pay for each workday Plaintiff and employees did not receive all timely and legally compliant rest periods."  Ex. A. ¶¶ 45-46.

37.     As with meal period violations, an estimate of one rest break violation per week of work is both reasonable and conservative where, as here, the Plaintiff contends that Defendant "employed policies and procedures which failed to provide Plaintiff" and other employees with rest breaks.  *Id.* at ¶ 19; *see, e.g.*, *Campbell,* 471 Fed. Appx. at 649; *Mackall*, 2016 WL 4579099, at *5; *Unutoa*, 2015 WL 898512, at *3.  As such, Plaintiff's allegation is for a regular violation to provide each member of the putative class a compliant rest break.

38.     Defendant's calculation of Plaintiff's claim for rest break violations is largely similar to that of alleged meal break violations.  This computation is based on conservative

estimates of a violation rate of only one (1) rest break violation per employee, per week, Defendant's calculation of Plaintiff's claim for failure to authorize and permit legally compliant rest breaks periods is **$3,100,884**.  The computation of the amount in controversy is based on conservative calculations that the 16,592 non-exempt Full-Time Package Handlers or Part-Time Package Handlers worked 258,407 weeks during the Applicable Period, that each putative class member earned a regular rate of $12.00 per hour, and that each putative class member incurred one missed rest break penalty per workweek.  Cox Decl., ¶¶ 9; 11.

39.    Consequently, the amount placed in controversy by the Rest Break Claim is $3,100,884.

(d)    <u>Attorneys' Fees Further Increase the Amount in Controversy</u>

40.    When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504 at *3  ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint.").

41.    Here, Plaintiff claims that he is entitled to attorneys' fees under the California Labor Code.  Ex. A, ¶¶ 1, 28(B)(vii), and *id.* Prayer For Relief.

42.    The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case.  *See Fritsch*, 889 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement); *Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *5 (E.D. Cal. 2009) ("[B]ecause attorney's fees are expressly authorized by statute, such fees may be included in

determining the amount in controversy . . . ."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (stating that "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred" and noting that "attorney's fees cannot be precisely calculated" but making projection of likely fees based on the court's "twenty-plus years' experience" overseeing similar cases).

43.     As detailed above, the amount in controversy for just three of Plaintiff's claims is at least $9,302,652.00.  The amount in controversy could be further increased by at least 25% to account for potential attorneys' fees.  Attorneys' fees awards in other employment actions show that attorneys' fees awards in wage-and-hour class actions often exceed 25% of the underlying amount in controversy.  *See Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 at *4, n.8 (noting that in California, where wage and hour class actions have settled prior to trial, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement); *see also Jasso*, 2012 WL 699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)).

44.     Accordingly, Defendant conservatively estimates that Plaintiff's attorneys' fees in this matter are likely to be at least 25% of the amount placed in controversy through Plaintiff's claims.

### (e)     Summary of Defendant's Calculations

45.     As described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, meal period, and rest break claims exceed $5,000,000.  Indeed, these three claims alone have placed at least $11,628,315.00 in controversy, as follows:

| Claim | Estimated Exposure |
|-------|--------------------|
| Minimum Wage Claim | $3,100,884 |
| Meal Period Claim | $3,100,884 |
| Rest Break Claim | $3,100,884 |
| Sub-Total | $9,302,652 |
| 25% Attorneys' Fees | $2,325,663 |
| **TOTAL** | **$11,628,315** |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

### III.     DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

46.     <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Alameda is located within the Northern District of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

47.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

48.     In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Alameda.  Notice of compliance shall be filed promptly afterward with this Court.

49.     As required by Federal Rule of Civil Procedure 7.1 and Local Rule 3-15, Defendant concurrently filed its Certificate of Interested Parties and Disclosure Statement.

50.     Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes the above-captioned action to the United States District Court for the Northern District of California.

DATED:  March 25, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Alexander M. Chemers
     Evan R. Moses
     Alexander M. Chemers

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.