Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
jbello@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Attorneys for PLAINTIFF
ERNEST CUADRA on behalf of himself and
others similarly situated.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST CUADRA on behalf of himself and others similarly situated.<br><br>    PLAINTIFF,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., et al.,<br><br>    DEFENDANTS. | Case No.: 2:20-cv-10719-JFW (SKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 16, 2021<br>Time: 1:30 p.m.<br>Courtroom: 7A<br><br>Judge: Hon. John F. Walter |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

**Pages**

### **Federal Cases**

*Abdullah v. U.S. Sec. Assocs.,*
731 F.3d 952 (9th. Cir. 2013)................................................................. 12, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
568 U.S. 455 (2013) ..............................................................................12

*Alcantar v. Hobart Serv.,*
800 F.3d 1047 (9th Cir. 2015)..............................................................13

*Arnold v. United Artists Theatre Circuit, Inc.,*
158 F.R.D. 439 (N.D. Cal. 1994) ..........................................................22

*In re AutoZone, Inc., Wage and Hour Employment Practices Litigation,*
289 F.R.D. 526 (N.D. Cal. 2012) ..........................................................13

*BHC Northwest Psychiatric Hosp., LLC v. Sec'y of Labor,*
951 F.3d 558 (D.C. Cir. Mar. 3, 2020) ..................................................4

*Bibo v. Federal Express,*
No. C 07-2505 TEH, 2009 U.S. Dist. LEXIS 37597 (N.D. Cal. Apr. 21,
2009)......................................................................................................17

*Crown v. Parker,*
462 U.S. 345 (1983) ..............................................................................11

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)................................................................12

*Frlekin v. Apple Inc.,*
309 F.R.D. 518 (N.D. Cal. 2015) ..........................................................16

*Frlekin v. Apple, Inc.,*
973 F.3d 947 (9th Cir. 2020)............................................................ 15, 16

*General Tel. Co. v. Falcon,*

457 U.S. 147 (1982) ...................................................................22

Greer v. Dick's Sporting Goods, Inc.,
    No. 2:15-cv-01063-KJM-CKD, 2017 U.S. Dist. LEXIS 57165 (E.D.
    Cal. Apr. 13, 2017) ........................................................... 16, 17

Hamilton v. Wal-Mart Stores, Inc.,
    No. ED CV 17-01415-AB (KKx), 2018 U.S. LEXIS 1682 (C.D. Cal.
    Aug, 21, 2018)................................................................... 18, 19

Hamilton v. Wal-Mart Stores, Inc.,
    2019 U.S. Dist. LEXIS 77700 (C.D. Cal. Mar. 4, 2019) ................... 16, 19, 20

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998)............................................... 22, 23

Howard v. CVS Caremark Corp.,
    No. CV 13-04748 SJO (PJWx), 2014 U.S. Dist. LEXIS 172406 (C.D.
    Cal. 2014) .......................................................................12

Jimenez v. Allstate Ins. Co.,
    765 F.3d 1161 (9th Cir. 2014)) .............................................13

Kurihara v. Best Buy Co.,
    No. C 06-01884 MHP, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug.
    30, 2007)........................................................................17

Otsuka v. Polo Ralph Lauren Corp.,
    251 F.R.D. 439 (N.D. Cal. 2008) ..........................................20

Rodriguez v. Nike Retail Servs.,
    928 F.3d 810 (9th Cir. 2019)................................................17

Slaven v. BP Am., Inc.,
    190 F.R.D. 649 (C.D. Cal. 2000) ..........................................12

Tyson Foods, Inc. v. Bouaphakeo,
    136 S. Ct. 1036 (2016) ......................................................24

United Steel v. ConocoPhillips Co.,
    593 F.3d 802 (9th Cir. 2009)................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) .......................................................................23

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ......................................................... 11, 12, 13

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ....................................................................23

**State Cases**

*Augustus v. ABM Sec. Servs., Inc.,*
    2 Cal.5th 257 (2016) .................................................................. 18, 20

*Bono Enterprises, Inc. v. Bradshaw,*
    32 Cal.App.4th 968 (1995) .......................................................... 18, 20

*Brinker Restaurant Corp. v. Super. Ct.,*
    53 Cal.4th 1004 (2012) ................................................................. passim

*Donohue v. AMN Services, LLC,*
    11 Cal.5th 58, 61 (2021) .............................................................. 18, 20

*Frlekin v. Apple, Inc.,*
    8 Cal.5th 1038 (2020) ................................................................... passim

*Hernandez v. Mendoza,*
    199 Cal.App.3d 721 (1988) ........................................................................24

*Morillion v. Royal Packing Co.,*
    22 Cal.4th 575 (2000) .................................................................................15

*Troester v. Starbucks Corp.,*
    5 Cal.5th 829 (2018) ................................................................... 17, 20

**Statutes**

Cal. Lab. Code
    § 226(a) ......................................................................................................15
    § 226.7(b) ............................................................................................17, 19
    § 512 ....................................................................................................17, 19

§ 1174(d) ...................................................................................8, 15
§ 1194 ...........................................................................................15

**Rules and Regulations**

Fed. R. Civ. P.
    Rule 23(b)(3)(a)-(d)..............................................................12, 24

I.W.C. Wage Order 9
    §2(H)............................................................................................15
    §3(A)(1).......................................................................................14
    §4(A)............................................................................................14
    §7(A)(3) ..........................................................................8, 14, 15
    §7(A)(5).........................................................................................8

**Other**

*Sec'y of Labor v. Integra Health Mgmt., Inc.,* OSHRC Docket No. 13-
1224 (Mar. 3, 2019).............................................................................4

## I.   INTRODUCTION

FedEx Ground Package System, Inc. ("FedEx" or "Defendant") is a global logistics company that employs thousands of employees, including in California. Plaintiff Ernest Cuadra ("Plaintiff" or "Cuadra") was employed by FedEx as an hourly employee from 2006 to May 2019. (Cuadra Decl. ¶2.) Plaintiff seeks to certify a putative class of employees who worked at FedEx Ground facilities which required them to go through security screening from March 6, 2019, to the present.

Defendant admits it has attempted to compensate its employees since September 29, 2019, for its mandatory Security Screening process by paying a flat sum per each timecard punch which at times amounts to **12 minutes per day**. (*See* Lavi Decl. Ex. 2, 26:6-27:7; 27:20-25, 29:15-18, 30:5-11, 34:25-35:11, 47:13-48:13, 51:7-12, 52:24-53:2, 48:16-22; Lavi Decl. Ex. 8 p. 461-002 (spreadsheet indicating pay 3 minutes per punch at location P941 after May 10, 2020).   Yet, Defendant also admits it **never** paid for Security Screening time between March 6, 2019 and September 28, 2019, despite California law requiring wages for employer-required searches. *Frlekin v. Apple, Inc.,* 8 Cal.5th 1038, 1053-1057 (2020).

Based on Defendant's admissions, Plaintiff challenges FedEx's uniform policies which violated California wage and hour laws by requiring employees to wait in line and pass through Defendant's Security Screening procedure, during which FedEx searched their persons and/or belongings every time the employees entered or exited the facilities before their shift, after their shift, and during meal and rest breaks (Lavi Decl. Ex. 1, 89:10-91:10, 92:10-16, 93:8-19, 69:15-70:9, 83:15-84:8, 80:25-81:4, 82:1-83:13; 100:14-19; 116:22-117:10; 152:5-22) **without pay** between March 6, 2019 and September 28, 2019 and underpaid since September 29, 2019.

FedEx's uniform policies and procedures violate California wage and hour laws by: (1) failing to pay adequate wages for all hours worked, i.e. Defendant's mandatory security screening; (2) impeding or discouraging off-premises meal breaks or reducing their meal period time to less than 30 minutes by requiring employees to go through Security Screening during their 30- minute meal breaks; (3) impeding or discouraging

off-premises rest breaks or failing to provide net 10 minute rest breaks by requiring employees pass through Security Screening during their rest breaks which cut their rest breaks to less than 10 minutes; (4) failing to provide accurate and complete wage statements based on the identified violations; and (5) failing to timely pay all wages upon separation of employment based on the identified violations.

All of Plaintiff's claims challenge the lawfulness of uniformly applicable policies. Liability is predicated not on open ended questions requiring the mining of the individual class member experiences or upon statistical or survey modes of proof. Rather, the liability theories for all of Plaintiff's subclasses are tethered to whether uniformly applicable policies which each subclass member has been subject throughout the class period, violate the class-wide wage and hour rights. Accordingly, the matter is not only eminently suited for class treatment under Federal Rule of Civil Procedure rule 23, with the claims of thousands being resolved through the resolution of simple, direct questions to the jury, class treatment is the superior method of adjudication here.

Based on these claims of systematic violations as described below, Plaintiff requests that the court certify the Plaintiff Class as follows:

**1. Unpaid Security Screening Class**:

**a. Pre-September 29, 2019 Security Class:** "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019 and September 28, 2019.

**b. Post-September 28, 2019 Security Class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between September 29, 2019, through the date of certification."

**2. Meal Class**

**a. Impeded or Discouraged Meal class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019, through the date of certification that worked any shift of over 6 work hours and their time record reflects a meal break."

**b. Short Meal Class** "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019,

through the date of certification that worked any shift of over 6 work hours and their time record reflects a meal break of 31-minutes or less."

**3. Rest Class:**

**a. Impeded or Discouraged Rest Class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019, through the date of certification that worked any shift of over 3.5 work hours."

**b. Short Rest Class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019, through the date of certification that worked any shift of over 3.5 work hours."

**4. Wage Statement Class**:

**a**. **Pre-September 29, 2019 Wage Statement Class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019 and September 28, 2019."

**b. Post-September 28, 2019 Wage Statement Class** "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between September 29, 2019, through the date of certification."

**5. Final Wage Class:**

**a. Pre-September 29, 2019 Final Wage Class:** "All former hourly non-exempt employees employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between March 6, 2019 and September 28, 2019."

**b. Post-September 28, 2019, Final Wage Class**: "All former hourly non-exempt employees employed by FedEx Ground Package System, Inc. at any facility that had a Security Screening process any time between September 29, 2019, through the date of certification."

## II.   SUMMARY OF RELEVANT FACTS

### A.   Defendant's Uniform Security Screening Policy

FedEx employs a mandatory "Security Screening" process for employees exiting and entering work at numerous California warehouse facilities to ensure all employees regardless of title, position, hourly or salary, permanent or seasonal are authorized to be on the premises to reduce or mitigate theft of customer and/or FedEx assets and to prevent weapons from entering the workplace. (Lavi Decl. Ex. 1,

(hereafter "Ward"[1]) 89:10-91:10, 92:10-16, 93:8-19, 69:15-70:9, 83:15-84:8, 80:25-81:4, 82:1-83:13, 100:14-19, 116:22-117:10, 152:5-22, 91:13-92:16, 80:2-21, 41:18-48:15; Lavi Decl. Ex. 5, pp. 8:3-10 ("Security Screenings" policy (SEC-306) governs), Ex. 10 (SEC-306), Ex. 9 p. 522 (Security Screening guidelines for contract security), Ex. 4 pp. 16:24-25 (policies intended to protect employees); *see Sec'y of Labor v. Integra Health Mgmt., Inc.,* OSHRC Docket No. 13-1224 (Mar. 3, 2019) (General Duty Clause requires employers keep workplace free from workplace violence); *BHC Northwest Psychiatric Hosp., LLC v. Sec'y of Labor,* 951 F.3d 558, 563 (same).)

During the class period, March 6, 2019, to the present, FedEx's Security Screening policy, named Security Screenings "SEC-306" (Lavi Decl. Ex. 10) and FedEx's Security "POLICY-018" (Lavi Decl. Ex. 11) have been in effect at a minimum of 36 facilities in California. (Lavi Decl. Ex. 7 pp. 460 through 460-002 (diagram showing security screening procedures in place at 36 facilities with minutes Defendant estimates for security screening wait times); Ward 150:3-21, 155:1-156:1, 156:17-20, 157:6-8 ("yes" for "Pedestrian Screening Guards" indicates some type of security screening occurs).)

FedEx's Security Screenings policy "SEC-306", states that all individuals entering a FedEx Ground facility may be subject to security screening and search of personal items and although "[n]o one is obligated to agree to submit to a security screening" failure to submit to screening "is a violation of FedEx Ground policies and procedures" and "[f]or employees, this could lead to disciplinary action up to and

---

[1] FedEx designated Steven Ward as FedEx's PMQ/Rule 30(b)(6) witness regarding policies, procedures and practices for Security Screening and direction and requirements of third-party security providers. (Ward 13:2-14:21). FedEx designated Christa Grabowski as FedEx's PMQ/Rule 30(b)(6) witnesses regarding its policies, procedures and practices pertaining to 1) calculation of non-exempt employees' worked hours, 2) calculation of non-exempt employees' wages, 3) calculation of final wages, 4) calculation of duration of meal and rest breaks and 5) payment of meal and rest break premium wages. (Lavi Decl. Ex. 2 (hereafter "Grabowski") 13:9-18:10.) FedEx designated Shea Winston as the PMQ/Rule 30(b)(6) witnesses regarding its policies, procedures and practices pertaining to 1) meal and rest breaks, 2) discipline and 3) wage statements appliable to hourly nonexempt employees that were subject to Security Screening. (Lavi Decl. Ex. 3 (hereafter "Winston" 20:6-23:16.)

including termination of employment…" (Lavi Decl. Ex. 10 pp. 136, 138; Ward 89:10-91:10, 92:10-16, 93:8-19, 69:15-70:9, 83:15-84:8, 80:25-81:4, 82:1-83:13, 100:14-19, 116:22-117:10, 152:5-22, 91:13-92:16, 92:5-9, 94:4-19, 109:12-24, 110:5-25.)

In addition, FedEx's Security Policy "POLICY-018," states employees must comply with the security policy and failure by employees "to comply with this policy may result in disciplinary action up to and including termination of employment from FedEx Ground … and/or removal from FedEx Ground premises." (Lavi Decl. Ex. 11 pp. 297, 310; Ward 145:13-146:18; 147:8-25; 149:2-19.)

Furthermore, FedEx outsources mandatory Security Screening to third-party security overseen by FedEx and provides third-party security with "Contract Security Post Orders" which security are required to follow. (Ward 16:15-17:5, 18:14-19:18, 20:12-22:9; Lavi Decl. Ex. 9 pp. 514-540). Section 4.1 of the Security Post Orders states that all persons entering or exiting designated security checkpoints must be cleared by security, any person refusing cannot enter, and failure to submit to screening "is a violation of FedEx Ground policy." (Lavi Decl. Ex. 9 p. 522)

**Hourly non-exempt employees are required to go through Security Screening procedure every time they enter and exit a facility using screening, including if leaving the premises during their meal and rest breaks**. (Ward 89:10-91:10, 92:10-16, 93:8-19, 69:15-70:9, 83:15-84:8, 70:11-71:8, 80:25-81:4, 82:1-83:13; 100:14-19; 116:22-117:10; 152:5-22; Winston 24:22-25:23, 28:24-29:9; 29:21-30:1; 67:13-24; 68:24-69:3; 77:25-78:7; 78:20-79:9; Lavi Decl. Ex. 24 p. 177, Ex. 25 p. 213 (handbooks require comply screening).) Defendant admits any employees' refusal to go through Security Screening is a violation of Defendant's policies and procedures. (Lavi Decl. Ex. 14, pp. 4:27-5:2 (resp. RFA 1).) Employees cannot enter the FedEx facility if they refuse the Security Screening. (Ward 142:17-23; Lavi Decl. Ex. 10 p. 147). If an outbound employee refuses the Security Screening, the employee will not be permitted to return without management approval. (Ward 142:24-145:12; Lavi Decl. Ex. 10 p. 147.) Refusal to comply with Security Screening will lead to discipline, up to termination. (Winston 225:1-5, 226:15-230:20; Ward 92:5-9; Lavi Decl. Ex. 12,

1   pp. 498-499 and Ex. 13, pp. 503-504 (conduct policy requires comply security).

2       FedEx knows which security tools are used at each of its facilities (Ward 159:9-167:10, 170:19-171:4) and depending on the security tools used at a particular facility, the process for inbound may employ several steps starting with scanning of a badge at the card reader, removing items that might set the alarm off and placing them on the divesting table, going through the metal detector; and if the metal detector alarms, further divesting. (Ward 111:15-113:23, 115:24-119:24.) If the metal detector continues to sound, the employee will be hand wanded and must first remove their hat, overcoat and/or rain gear which will be physically inspected. (Ward 131:5-132:8.) If the alarm continues to sound, the employee will be patted down. (Ward 118:9-16, 139:20-140:1.) All backpacks, lunch bags, or bags must be screened which means opening the bag for the security guard to do a visual inspection of said items. (Ward 118:18-119:24.) The security guard will also check whether the employee can bring a cell phone inside the facility by verifying it on their ID badge. (Ward 121:19-122:21.)

        For outbound, first, the employees need to divest everything onto the divesting table that may set the alarm off. (Ward 128:6-25.) Next, they walk through the detector and if alarm sounds, they need to divest again and try again. (Ward 129:1-9.) If the alarm sounds again, the employee could be hand wanded but must remove their hat, overcoat and/or rain gear which will be physically inspected. (Ward 129:1-9, 131:5-132:8.) If the alarm continues, the employee will be patted down. (Ward 139:20-140:1.) If shoes cause the alarm, the employee must remove shoes. (Ward 135:11-20, 136:4-21.) If someone has a cell phone on the way out, the security guard will also verify that the cell phone on the employee is authorized for that employee. (Ward 182:18-23.) For the ten (10) locations that have the random screening for outbound, if you push the button and the light turns red, the employee gets scanned with a hand wand but must first remove anything that may set off the wand. (Ward 125:10-127:1, 127:11-20; Winston 43:10-25.) Like inbound, if the alarm continues to sound, the employee will be patted down. (Ward 139:20-140:1.) Bags, purses, and backpacks are screened. (Ward 127:22-128:4.) If the personal items are cleared, the screening is complete. (*Id.*)

The same security guard may be performing all of the described steps. (Ward Depo. 127:11-20.)

These methods of security, walk through metal detectors, pat downs, hand wands, and random screening are described in Defendant's **uniform** security screening policy SEC-306 (Lavi Decl. Ex. 10; *see* Lavi Decl. Ex. 4 pp. 6:6-19, 7:7-16, 9:1-12, 10:4-14, 10:22-26 (Responses to Interrogatories Nos. 4 and 6, referencing FedEx Security Screening Policy "SEC-306" and Security Policy "POLICY-018", responses to Interrogatory No. 4 (b-c))). Each security tool (e.g., card reader, turnstile, walk-through metal detector, hand wand) and security guard can only be used to inspect one employee at a time, which often leads to employees waiting in line for inspection since everyone, regardless of title, position, or status must stand in the same line to be cleared through the security check process. (Ward 99:25-100:13, 56:3-16, 57:13-23.)   It must be noted that FedEx has never had a policy to speed up the screening process if employees are waiting too long for the screening. (Ward 138:14-139:1.)

Defendant admits that between March 6, 2019 and September 28, 2019, Defendant did not pay wages to employees for Security Screening, including time waiting in line and passing through the Security Screening, since FedEx did not consider the security screening process as "hours worked," which was limited to the employees' recorded punch times. (Grabowski 30:21-25, 31:25-32:4, 40:5-12, 93:13-25, 26:6-27:7; Lavi Decl. Ex. 15 pp. 3-13 (resp. to RFA Nos. 6-13).) Even though it had just settled an action alleging the same violations, FedEx ignored the employees were under FedEx's control during mandatory Security Screening. FedEx required that the employees wait for and subject themselves to the screening and FedEx expects employees to follow the instructions given to them by the security guards. FedEx placed signs at entrances/exits informing employees that they must comply with the Security Screening procedure. (Ward 141:21-142:14.) FedEx's control is so pervasive that if an inbound employee refuses to comply with the Security Screening, they will be subject to progressive discipline, will not be allowed access to the facility, will not be permitted to complete their workday and any outbound employee who refuses will

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

not be permitted to return without management approval. (Ward 66:16-67:1, 142:17-23; Lavi Decl. Ex. 10 p. 147; Winston 225:1-5, 226:15-230:20.)

It should also be noted that FedEx has had the ability to track the time employees had to wait in line and pass-through Security Screening. Defendant admits some facilities have card readers at the security guard stations where the employees swipe their ID card, which is the same ID card that they use to clock in and out (Ward 73:8-12, 74:13-22) and the time that the employees swipe their card at the reader at the security check point gets registered in a database (Ward 75:17-76:5).

On September 29, 2019, Defendant began paying wages intended to compensate for the Security Screening. (Grabowski Depo. 25:20-23.) However, Defendant does not record the time employees pass through Security Screening and pay employees for the Security Screening as part of their recorded "hours worked" as required by law. (Cal. Lab. Code §1174, subd. (d); Wage Order 9 §7(A)(3), (5); Grabowski Depo. 26-27:7; 27:20-25, 29:15-18, 30:5-11, 34:25-35:11.) Defendant pays security screening time based on a spreadsheet which sets forth a flat sum amounts of minutes calculated by the security department, which Defendant multiplies by the number of times the employee uses the time clock, "time punch." (Lavi Decl. Ex. 8 (spreadsheet indicating code of facilities with security, date payments began, and amount of minutes paid for each time punch); Grabowski 47:13-48:13, 51:7-12, 52:24-53:2, 48:16-22; Ward 158:11-13, 152:23-153:12.) **In addition, Defendant never paid this additional time at an overtime rate of pay, instead just paying the hourly rate by the flat sum resulting in overtime violations.** (*Id.*) In addition, Defendant admits that it **never** any such wages from March 6, 2019, and September 28, 2019.  Moreover, Defendant admits in calculating the time to compensate for Security Screening, it never considered the high number of seasonal employees during peak season (causing longer wait times) when it calculated the flat sum pay per punch. (Grabowski 51:13-24.)

Defendant also failed to pay wages to employees for time they went through security screening during their unpaid meal period. Defendant calculates unpaid meal break time based on employees' punch times for meal periods reflected in Defendant's

time-keeping system. (Grabowski 22:24-3; 24:5-13.) Since the meal break is unpaid, between March 6, 2019 and September 28, 2019, FedEx failed to pay any wages for Security Screening when an employee left during a meal period because Defendant did not make any adjustments to compensate employees for the Security Screening process that took place during their meal breaks. (Grabowski 62:10-22, 61:12-24, 62:10-19.)

**B.    Defendant's Uniform Failure To Provide Proper Meal Breaks**

Defendant admits that all policies and guidelines given to class members inform them they are entitled to a meal break of **only** 30 minutes in length. (Winston 80:19-84:3, 86:14-88:1, 91:9-19, 93:11-22, 96:15-25, 98:7-100:19, 107:4-108:12; Lavi Decl. Ex. 17 (meal/rest acknowledgment), Ex. 18 (management guidance on meal/rest break requirements), Ex. 19 (2019 meal/rest policy acknowledgment), Ex. 20 (2017 meal/rest policy acknowledgment), Ex. 21 (2021 meal/rest acknowledgment), Ex. 22 (time clock guideline), Ex. 23 (meal agreement guidance); Lavi Decl. Ex. 4 pp. 11-12 (resp. stating aforementioned policies set forth meal period policies).) FedEx admits it has never had a policy that meal breaks should be at least 30 minutes plus additional time for the Security Screening procedure. (Winston 258:1-6.) Defendant's limit of meal periods to only 30-minutes and mandatory Security Screening when leaving the premises violated California law by either: 1) causing the meal breaks to be less than 30 minutes and failing to relieve employees of duties during meals, in violation of established law, or in the alternative, 2) impeding or discouraging employees from taking off-premises meal breaks, also in violation of established law as discussed fully below.

FedEx allows the employees to leave the premises during their meal breaks. (Winston 111:16-22.) And if an employee has taken a meal break, the daily punch would reflect a meal punch. (Winston 65:6-12, 65:23-66:12.) However, if an employee leaves the premises for a meal break, he or she must go through the mandatory Security Screening twice, once upon leaving and once to return, during the meal break, otherwise they will be disciplined. (Ward 70:11-71:8, Lavi Decl. Ex. 9 p. 522.) Thus, employees would get a shortened meal break, interrupted by employer control, if they left the premises and/or were discouraged and impeded from leaving the premises

because the Security Screening process cuts into the employees' limited meal break time. FedEx does not even have a procedure for employees to request meal premium pay for shortened meal breaks caused by Security Screening and employees were not paid premium wages for meal periods shortened/interrupted by Security Screening. (Grabowski 83:14-84:1; 85:1-8, 68:12-20.) FedEx admits it does not know whether employees are relieved of all duties during a meal period if they go through Security Screening during meal breaks. (Winston 173:18-179:3.)

### C.    Defendant's Uniform Failure To Provide Proper Rest Breaks

Defendant admits that all of FedEx's policies, procedures and guidelines inform hourly non-exempt employees they are entitled to rest breaks of **only** 10-minutes in length. (Winston 80:19-84:3, 90:4-12; 91:9-91:24; 93:11-96:4; 96:15-97:5; 107:4-24, Lavi Decl. Ex. 17-22 (policy acknowledgments, guidelines, and procedures informing entitlement to rest breaks of only 10-minutes long); Lavi Decl. Ex. 4 pp. 14-16 (resp. to interrogatory 10, referencing Ex. 17-22 as setting forth Defendant's rest period policies).) FedEx has never had a policy in place that rest breaks during the class period should be 10-minutes plus any Security Screening time. (Winston 258:7-12.)

FedEx allows employees to leave the premises during their rest breaks, but if an employee leaves the premises for a rest break, he or she must go pass through mandatory Security Screening process twice, upon leaving and upon return, during the 10-minute rest break. (Ward 70:11-71:8; Lavi Decl. Ex. 9 p. 522.) Employees must comply with the Security Screening procedure during their rest breaks or would be disciplined. This means employees would always get a shortened rest break interrupted by employer control if they left the premises and/or were discouraged and impeded from leaving the premises during their rest breaks because the Security Screening process cuts into the employees' rest breaks.   FedEx has never had a process for employees to request rest break premiums for rest breaks shortened by Security Screening. (Grabowski 91:14-92:23.)

### D.    Uniform Failure to Provide Proper Wage Statements

**Pre-September 29, 2019**: Wage statements do not accurately reflect hours

worked or wages earned by employees between March 6, 2019 and September 28, 2019, because Defendant admits that the wage statements did not include Security Screening time or wages to be paid for that time. (Winston 235:7-235:24, 241:19-242:13, 233:15-234:14, 235:25-238:11, 241:19-242:13.)

**Post-September 28, 2019:** As of September 29, 2019, the wage statements have reflected a line item for security wait time hour and pay. (Winston 243:3-10, 232:25-233:11; Grabowski 25:20-23.) However, the reflected time is not based on the actual time waiting for and passing through Security Screening and the reflected wages do not compensate Security Screening time as "hours worked." (Grabowski 25:20-23, 26:6-27:7, 27:20-25, 29:15-18, 30:5-11.) Instead, as set forth above, Defendant paid employees on a flat minute per punch basis rather than Security Screening time. (Grabowski 47:13-48:13, 51:7-12, 52:24-53:2.)

### E.    Failure to Timely Pay Final Wages

**Pre-September 29, 2019:** From March 6, 2019 to September 28, 2019, the final wages paid to the employees who separated employment did not include any wages for Security Screening or waiting time. (Grabowski 94:1-95:9.)

**Post-September 28, 2019:** Since September 29, 2019, to present, final wages paid has not been based on actual time that it takes the employees to go through the security check process and the paid wages are not based on payment for "hours worked" engaged in the Security Screening. (Grabowski 25:20-23, 26:6-27:7, 27:20-25, 29:15-18, 30:5-11, 47:13-48:13, 51:7-12, 52:24-53:2.)

## III.  LEGAL ARGUMENT

### A.    Standard for Class Certification

Class actions serve two primary purposes: (1) accomplishment of judicial economy by avoiding multiple actions against the same defendant, and (2) protecting the rights of persons who might not be able to present their claims individually. *Crown v. Parker*, 462 U.S. 345, 349-350 (1983). A plaintiff seeking class certification bears the burden of showing the class satisfies the requirements of Federal Rules of Civil Procedure Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011).

Under Rule 23(a), Plaintiff must first show that the class satisfies (1) ascertainability and numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-980 (9th Cir. 2011).

In addition to Rule 23(a), certification requires a showing that one of the requirements of Rule 23(b) have been met. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th. Cir. 2013). Plaintiffs must show questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). While the district court must conduct a "rigorous analysis" of Rule 23 criteria (*Dukes*, 564 U.S. at 349-351), Rule 23 does not grant a "license to engage in free-ranging merits inquires at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* Doubts are to be resolved in favor of certification. *Slaven v. BP Am.*, Inc., 190 F.R.D. 649, 651 (C.D. Cal. 2000). Thus, a class should be certified if paintiff's theory of liability is amenable to class treatment. *See United Steel v. Conoco Phillips Co.*, 593 F.3d 802, 807–08 (9th Cir. 2009) (reversing trial court order denying cert.).

## B.    The Classes Are Numerous And Ascertainable

The numerosity requirement is met when the class is "so numerous that joinder of all members is impracticable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). Numerosity clearly exists here. Between March 6, 2019 and present, at least 59,800 hourly non-exempt employees were subject to Security Screening. (Lavi Decl. Ex. 4 pp. 5-6, 13-14 (Resp. to Nos. 2, 3 and 9.) Defendant admits that between March 6, 2019, and September 28, 2019, at least 33,031 non-exempt employees were subject to Security Screening (Lavi Decl. Ex. 6 pp. 4-5, 6-7 (Resp. Nos. 13, 14, 17). Defendant can identify its hourly non-exempt employees subject to Security Screening as evidenced by the provided 10% class sample. (Grabowski 96:5-10; Lavi Decl. ¶6.)

Ascertainability is met if the class is adequately defined. *Howard v. CVS*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Caremark Corp.*, No. CV 13-04748 SJO (PJWx), 2014 U.S. Dist. LEXIS 172406, at *9 (C.D. Cal. 2014). Here, the proposed subclasses have been drawn to objectively and plainly state who is proposed in membership, such that notice of the proceeding can be delivered and an opportunity to opt out can be provided. The proposed class is identifiable and ascertainable because Defendant has the name and address of non-exempt employees in California subject to Security Screening and has provided the contact information of 10% of the class members. Defendant has identified locations where it employed Security Screening, pays wages intended for Security Screening, and can identify hourly employees from its records. (Lavi Decl. Ex. 7 and Ex. 8.)

### C.    Common Questions Of Law And Fact Exist And Predominate (Rule 23(a)(2), (b)(3))

For commonality to be satisfied, class-wide claims must hinge upon a common contention of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 534 U.S. at 350; *see also Abdullah*, 731 F.3d at 957. Common questions must generate common answers that are "apt to drive the resolution" of class claims. *Abdullah*, 731 F.3d at 957. Whether a common question is apt to drive class-wide claims "depends on the nature of the underlying legal claims that class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Ultimate resolution of the common questions "in favor of either side is immaterial at this class certification stage." *Id.* at 116, n. 5. The sole issue is whether the answers to common questions will drive the resolution of the class' claims. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap. *In re AutoZone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 533, n.10 (N.D. Cal. 2012). Here, resolution of all class claims is predicated on how the fact finder resolves questions based on the lawfulness of uniformly applicable policies, or uniform lack thereof, that are common to all class and/or subclass members.

### 1.   Common Questions Predominate for the Unpaid Security

### Screening Class

Plaintiff's theory for unpaid wages for the Unpaid Security Screening Class and subclasses are based on Defendant's admissions that for the *Pre-September 29, 2019 Security subclass*, Defendant failed to compensate employees with wages for FedEx's mandatory Security Screening process before and after their shift and during meal breaks as required by California law. *Frlekin v. Apple, Inc.,* 8 Cal.5th at 1053-1057.

As to *Post-September 28, 2019 Security subclass*, Defendant failed to adequately compensate employees subject to FedEx's mandatory Security Screening process with wages for all hours worked under California law. California law requires an employer record employees' "hours worked" and pay wages for all "hours worked." (Wage Order 9 §§3(A)(1), 4(A) (requiring payment of minimum wage and overtime for all "hours worked"), §7(A)(3) (requiring recording of work periods and hours worked).) In contrast, Defendant admits that when it did begin paying wages for Security Screening, Defendant did not record the Security Screening time as "hours worked" and instead paid wages based on a set number of minutes for each time an employee used the time clock each day. Defendant's method of pay fails to adequately compensate employees as is evident by Defendant's own admission that during the high season the security wait times would increase due to the number of seasonal employees hired, e.g., from 1 minute to 3 minutes for Santa Fe Springs 906 (Lavi Decl. Ex. 7 increased "Estimated Peak Wait Time"). Yet, Grabowski admits FedEx did not pay based on its own estimated times, did not increase the paid time for peak seasons, and FedEx only paid based on the number of minutes reflected on its spreadsheet (Lavi Decl. Ex. 8), which for example, had no increase in the number of minutes paid during the peak holiday season and paid less than its own estimated times. (Grabowski 47:13-22, 48:9-13, 51:7-24, 52:24-53:2, 54:23-55:8.) For example, instead of paying 3 minutes per time punch for Santa Fe Spring 906, FedEx only paid 1 minute between September 29, 2019 and May 10, 2020, and has increased the pay to 2 minutes since May 10, 2020 to present. Defendant has never paid the 3 minutes per time punch which Defendant itself estimated. (Grabowski 47:13-22, 48:9-13, 51:7-24, 52:24-53:2, 54:23-55:8.) In

addition, since FedEx has paid at least 2 minutes per time punch since May 10, 2020, there is no reason why it should not have paid the same 2 minute per punch from March 16, 2019, to May 10, 2020. Regardless, it is clear that Defendant failed in its duty to record and compensate wages for the "hours worked" spent in Security Screening.

In California, employers must record and maintain records showing the hours worked by employees. Wage Order 9 §7(A)(3); Cal. Lab. Code §§1174(d), 226(a). Employers must then pay employees at least a minimum wage for all "hours worked," as that phrase is defined in the Wage Order and interpreted by California courts. Cal. Lab. Code §1194. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Wage Order 9 § 2(H). "[I]t is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000). As recently determined by the California Supreme Court and Ninth Circuit in a case addressing mandatory employee searches*;* time waiting for and undergoing, employer-required searches of bags or personal technology devices constitutes "hours worked" which must be paid with wages under California law. *Frlekin v. Apple, Inc.,* 8 Cal.5th at 1053-1057; *Frlekin v. Apple, Inc., 973 F.3d 947, 951-952* (9th Cir. 2020).

These questions can be easily answered through common proof, including but not limited to testimony by FedEx's corporate designees, FedEx's Security Screening and Security policies and procedures, surveys and depositions and, at minimum for the time Defendant paid no wages, FedEx's own determination of Security Screening times as reflected in its own documents reflecting estimated waiting times and minutes for Security Screening it has paid since September 29, 2019 (Lavi Decl. Ex. 7, 8).

Plaintiff claims that, just like the extremely similar *Frlekin* case, FedEx requires employee Security Screening which renders the time waiting for and going through the screening under FedEx's control and compensable under California law. Any time an employee enters or leaves any of the 36 Security Screening facility, including during unpaid meal period time, he or she must pass through the Security Screening under

procedures established by FedEx and is subject to discipline if refused. FedEx sets up the security in a manner which only one employee passes through at a time resulting in wait times before the security screening can begin and has not provided time clocks so that the time spent passing through security can be recorded and compensated, even though it has the ability to do so. (Ward Depo. 73:8-12, 74:13-22, 75:17-76:5 (newer facilities have card readers in Security areas where employees swipe cards and the time is recorded for non-wage purpose).) The California Supreme Court recently noted the employer, not employee, must devise methods of "tracking of small amounts of regularly occurring worktime." (*Troester v. Starbucks*, 5 Cal.5th 829, 848 (2018).)

Thus, the common questions driving this class are whether Defendant had a uniform policy of mandatory Security Screening applicable to the class members, whether Defendant failed to pay wages for the time spent passing through the mandatory security screening between March 6, 2019 and September 28, 2019, whether Defendant failed to pay adequate wages for mandatory security screening since September 29, 2019 to present, and whether this policy violated California law. These questions are capable of resolution on a class-wide basis, because all inquire into the lawfulness of Defendant's company-wide policies and practices.

Claims involving off-the-clock security checks are readily certifiable. In *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 520-521, 523-526 (N.D. Cal. 2015) the court certified a class where policies required a manager to search all employee bags to prevent theft whenever an employee left the premises with a bag even though employees could avoid a search if they did not bring a bag to work. As noted above, subsequent California Supreme Court and Ninth Circuit decisions made clear in *Frlekin* that wages were due to employees for the mandatory searches as well as the time waiting for the search. *Frlekin*, 8 Cal.5th at 1053-1057; *Frlekin, 973 F.3d at 951-952* (now instructing court to grant summary judgment in favor of the employees in *Frlekin*).

Similarly, in *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2017 U.S. Dist. LEXIS 57165, at *11-13, 16-27 (E.D. Cal. Apr. 13, 2017) the court certified a mandatory security check case in which the employer required all

employees leaving the store to submit to a visual inspection if the employee did not have a bag and a bag search if the employee did have a bag to curb employee theft. Like *Frlekin* and here, the mandatory searches were unpaid and required employees to wait in order to get searched. *Greer,* 2017 U.S. Dist. LEXIS 57165, at *13-15. And like here, the employees retained an expert who set forth a survey methodology to determine the amount of off the clock time spent during the searches. *Id.* at *17-18; *see Kurihara v. Best Buy Co.*, No. C 06-01884 MHP, 2007 U.S. Dist. LEXIS 64224, at *23-31 (N.D. Cal. Aug. 30, 2007) (certifying retail class subject to off-the-clock security checks); *Bibo v. Federal Express*, No. C 07-2505 TEH, 2009 U.S. Dist. LEXIS 37597, at *9-12, 37-40 (N.D. Cal. Apr. 21, 2009) (cited by *Greer* for certification of policy requiring employees to wait in line for equipment and to check their schedules).

Here, it is undisputed employees must wait in line and go through Defendant's mandatory Security Screening, that Defendant did not pay any wages for the time period of March 16, 2019 to September 28, 2019, and Defendant did not record and pay wages for recorded screening time from September 29, 2019 to present. Defendant may argue it has no liability under the federal de minimis doctrine, but the California Supreme Court and Ninth Circuit have held that the de minimis doctrine does not apply to regularly recurring activities such as mandatory searches at issue here. *Troester,* 5 Cal.5th at 837-849; *Rodriguez v. Nike Retail Servs.,* 928 F.3d 810, 814-818 (9th Cir. 2019). In addition, this is a merits question not relevant to certification.

### 2. Common Questions of Fact or Law Exist and Predominate for the Meal Period Subclasses

#### a. The Impeded or Discouraged Meal Class

Plaintiff asserts that Defendant's mandatory Security Screening impedes and discourages employees from leaving the premises during breaks in violation of California law, otherwise the employees is entitled to meal break premium pay. Cal. Lab Code §§512, 226.7(b). The California Supreme Court has stated that an employer satisfies its duty to provide a meal break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, **and does not impede or discourage them from doing so.**" *Brinker*

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Restaurant Corp. v. Superior Court,,* 53 Cal.4th 1004, 1040 (2012) (emphasis added). In addition, employees do not receive a duty-free meal period if an employee is restrained from leaving the premises during the meal period. *Bono Enterprises, Inc. v. Bradshaw,* 32 Cal.App.4th 968, 975 (1985); *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal.5th 257, 265 (2016) (during meals, employers cannot subject employees to any control) Also, "the wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks." *Brinker,* 53 Cal.4th at 1040. The Supreme Court has also recently emphasized that "[t]he meal period provisions are designed to prevent even minor infringements on meal period requirements," that shortening even by minutes has significant impact on health risks and effective use of the meal period, and "by requiring premium pay for any violation, no matter how minor, the structure makes clear that employers must provide compliant meal periods whenever such a period is triggered." *Donohue v. AMN Services, LLC,* 11 Cal.5th 58, 61, 69 (2021).

In this case, the fact that Defendant requires the Impeded or Discouraged Meal Class to wait in line for and subject themselves to Security Screening when they leave *and* when they return during a meal break constitutes Defendant impeding or discouraging employees from taking an off-the-premises break in violation of California law. *Bono,* 32 Cal.App.4th at 975; *Brinker,* 53 Cal.4th 1040 (cannot impede or discourage from a legally compliant meal break). For example, in *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2018 U.S. LEXIS 168235, at *14-18, 36-37 (C.D. Cal. Aug. 21, 2018), the Central District court certified a meal period claim premised on mandatory security checks which could serve as an impediment or discouraging class members from leaving the premises during meals. In response to the argument this would require individualized inquiry into whether each employee felt impeded or discouraged from taking off-premises meal breaks, the court noted that in the *Brinker* Court's statement an employer is prohibited from impeding or discouraging breaks "the emphasis is on the action of the employer, not necessarily on whether an employee personally felt discouraged [and] [w]hether the [security]

checkpoint is an impediment is a common question that can be answered objectively as to all class members." *Id.* at *17-18. Thus, like in *Hamilton,* Plaintiff's theory raises the common question of whether the Security Screening and its reduction of the 30-minute meal breaks impeded or discouraged employees from leaving the premises. In refusing to decertify the class on this theory, the *Hamilton* court noted that this is an *objective* question to be determined by a fact finder and that this did not require expert proof of employee dissuasion. (*Hamilton v. Wal-Mart Stores, Inc.,* 2019 U.S. Dist. LEXIS 77700, at *52 (C.D. Cal. Mar. 4, 2019.) In addition, Plaintiff's expert has developed a methodology and questionnaire which, if necessary, will show common proof on discouragement to leave during breaks. (Roberts Decl. ¶¶10-15, 22-27.)

Thus, this subclass gives rise to predominant questions of fact and law including whether FedEx required employees to undergo Security Screening during meal periods; whether this was an impediment or discouraged employees' ability to take off-premises meals; and whether this violated California law. Common proof through corporate witness testimony, documents and time and wage records, and questionnaire results, if deemed necessary, can be used to answer each of these questions.

### b. The Short Meal Class

As noted above, the California law requires employers to provide 30-minute meal periods to any employee working more than five hours in a workday. Cal. Lab Code §512. If Defendant fails to do so, it must provide the employee with one hour of pay for each workday a meal period is not provided. Cal. Lab. Code §226.7(b).

As set forth above, all of FedEx's policies and procedures inform the employees that are subject to the Security Screening Policy with exactly 30-minute meal periods wherein at least 2 to 6 minutes of it is spent on security screening. (Lavi Decl. Ex. 7 pp. 460 through 460-002, Ex. 8 pp. 461 through 461-003.) As such, the following common question applies to all subclass members: whether under Defendant's policy that is uniformly applicable to its hourly non-exempt employees in California during the class period the employees did not receive full 30-minute meal break when their meal break punch reflects a 31 minute or less meal break and they had to go through the mandatory

security process during their meal break. It should be noted that Defendant admits that it has not paid a single meal break premium wage for meal breaks because the employee had to go through the security check process.

### 3. Common Questions Exist And Predominate for the Rest Period Subclasses

**The Impeded or Discouraged Rest Class:** California law requires an employer provide employees with 10 minutes' rest for every four hours or major fraction thereof. *Brinker,* 53 Cal.4th at 1029; Wage Order 9 §12. The Supreme Court has made clear an employer cannot control how an employee spends a rest break which would include any limitation on where the employee takes a rest break. *Augustus,* 2 Cal.5th at 265-266 (identical to meal periods, employer must relieve employee of all control during rest periods); *Bono,* 325 Cal.App.4th at 977-978 (employer control during break when required stay on premises). Thus, like meal breaks, an employer cannot discourage or impede an employee from taking rest breaks. *See Otsuka v. Polo Ralph Lauren Corp.,* 251 F.R.D. 439, 442, 447 (N.D. Cal. 2008) (class certification proper on rest break claim where security check and wait time "discouraged" employees from taking rest breaks). And like meal breaks, California law focuses on strict adherence to the requirement employees receive 10-minute rest periods and requires courts to "scrupulously guard[] against encroachments on these periods" (*Troester,* 5 Cal.5th at 844) such that premium pay is required "for any violation, no matter how minor" (*Donohue,* 11 Cal.5th at 69).

Plaintiff claims that the mandatory Security Screening process impeded or discouraged the employees from taking their rest breaks since it was required when leaving *and* returning during employees' rest breaks which could take between 2 to 6 minutes and would serve to discourage employees from leaving the premises during rest periods by shortening the rest periods. (Winston 258:7-12, Lavi Decl. Ex. 7, Ex. 8.) Whether Defendant's requirement for security checks impedes or discourages leaving the premises is an *objective* question. *See Hamilton,* 2019 U.S. Dist. LEXIS 77700, at *52. In addition, Plaintiff's expert has developed a methodology and questionnaire which, if necessary, may show common proof on discouragement to leave during breaks. (*See* Roberts Decl. ¶¶10-15, 22-27.) Therefore, this subclass gives rise to predominant

questions including whether FedEx required employees to undergo Security Screening during rest periods; whether this impeded or discouraged off-premises rest periods; and whether this violated California law. Common proof through corporate witness testimony, documents and time and wage records, and additional questionnaire, if necessary, can be used to answer each of these questions. (Roberts Decl. ¶¶10-15, 22-27.)

The Short Rest Class: Employers are required to provide employees a net ten minute rest break for every four hours of work or major fraction thereof and must relieve employees of all control during the rest break or must pay the employee an hour wage for each workday a legally compliant rest break is not provided. *Brinker,* 53 Cal.4th at 1029. Since employees are required to go through the Security Screening during their rest breaks, they are not relieved of employer control and the employer has violated its obligation to provide a duty-free rest period. In addition, the Security Screening during rest breaks would reduce the rest break time below what is required by law. As with all other subclasses herein, the common questions here will generate common answers for all class members and Defendant.

### 4. Common Questions Exist/Predominate for the Wage Statement Subclasses

Pre-September 29, 2019 Wage Statement Class: Defendant admits the number of *hours worked* reflected on the employees' wage statement between March 6, 2019, and September 28, 2019, did not include the time it took the employees to go through the security check process. In addition, Defendant admits that the *wages* reflected on the employees' wage statement between March 6, 2019, and September 28, 2019, did not include any wages for the time that it took the employees to go through the security check process. Thus, common questions of fact and law are whether Defendant provided accurate wage statements when the total hours were inaccurate and total wages did not include any hours and wages for Security Screening.

Post-September 28, 2019 Wage Statement Class: As of September 29, 2019, FedEx credited non-exempt employees with Security Screening time which began to appear on the wage statements based on the number of times an employee used the

time clock per day multiplied by a set number of minutes. The number of minutes is the same amount for each punch during the day and is not based on actual records of time spent in Security Screening. (Grabowski 25:20-23, 26:6-27:7, 27:20-25, 29:15-18, 30:5-11; Winston 232:25-233:11.) Thus, a common question of fact and law is whether Defendant provided accurate wage statements to its hourly non-exempt employees that had to go through the Security Screening when the total hours and total wages were not based on actual hours worked.

### 5. Common Questions Exist/Predominate for the Final Pay Subclass

**Pre-September 29, 2019 Final Wage Class:** Defendant admits that from March 6, 2019 to September 28, 2019, the final pay paid to employees subject to Security Screening did not include any pay for Security Screening. (Grabowski 94:1-95:9.)

**Post-September 28, 2019, Final Wage Class**: After September 28, 2019, common questions of fact and law are whether Defendant timely provided final wages to all of its hourly non-exempt employees that had to go through the Security Screening Process when the final wages did not include any wages for the Security Screening process for said time because of the flat sum payment.

### D. Plaintiff's Claims Are Typical Of The Class (Rule 23(a)(3))

Typicality simply requires that named Plaintiff be a member of the class he or she seeks to represent and "possess the same interests and suffer the same injury" as putative class members. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1997). Claims "are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. It is enough that Plaintiff's claims "arise from the same remedial and legal theories as the class claims." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994).

Here, the claims of Plaintiff are typical of the claims of the rest of the class and all subclasses. Like the other putative class members, Plaintiff was employed by FedEx as a nonexempt hourly employee and subject to Defendant's mandatory Security Screening procedures and was not paid sufficient wages for the mandatory Security

Screening procedures (Cuadra Decl. ¶¶2, 7-8); Defendant impeded and discouraged his ability to take meal or rest periods off premises; and Defendant interrupted his meal periods and reduced his meal and rest time when he did go off premises for meal or rest breaks and passed through Security Screening (Cuadra Decl. ¶¶6-12). Thus, he was not provided with wage statements accurately reflecting his hours worked or wages he should have been paid due to the unrecorded and unpaid time. In addition, he was not paid for all of his worked hours and wage when he was terminated. Accordingly, Plaintiff's claims are typical of the proposed class.

**E.    Plaintiff Is Adequate Under Rule 23(a)(4) and Counsel Should Be Appointed as Class Counsel Under Rule 23(g)(1)(A)**

Adequacy requires that the proposed class representative (1) not have conflicts of interest with other class members and (2) is represented by qualified counsel. *Hanlon*, 150 F.3d at 1020. There is no evidence of any conflict between the class representative, his counsel, or the putative class. Plaintiff has demonstrated he is willing and able to prosecute this litigation. (Cuadra Decl. ¶¶2-5.) The proposed class representative has a thorough understanding of this suit, interests in line with those of the class, and no conflicts with other class members. Cuadra responded to discovery and testified in deposition to protect class members' interests. (Cuadra Decl. ¶¶2-12.)

Counsel for Plaintiff are also adequate and have significant experience in the prosecution of wage and hour class actions and employment litigation in general. (Lavi Decl. ¶¶4-5.) Plaintiff's counsel has vigorously prosecuted this adversarial case and will continue to do so. Plaintiff's counsel has litigated this matter thoroughly and incurred the costs to retain an expert to assist in creating a survey and methodology to procced with trial. Thus, Plaintiff and counsel are adequate representatives of the class.

**F.    Class Treatment Is Superior To Thousands Of Individual Lawsuits**

"Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1189 (9th Cir. 2001). The "superiority" prong requires a consideration of: (1) class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)-(d). Nothing in the record indicates class members' have any individual interest in controlling the prosecution or defense of separate actions. Indeed, all class members' harm arises out of the same allegedly unlawful policies. The only other litigation concerning this controversy is for PAGA penalties by Cuadra which is stayed and a separate plaintiff, represented by Plaintiff's Counsel, for which Defendant has moved to stay the matter.

The class is not unmanageable as the common questions of Defendant's policies will establish liability as to all class members. If liability is determined in Plaintiff's favor, determining class-wide damages can be based on calculations as outlined by Plaintiff's expert with further supplementation if necessary. (Roberts Decl. ¶¶47-92.) California law requires employers to keep records showing hours worked by employees and if an employer fails to keep accurate records, a plaintiff may prove the number of hours worked by reasonable estimate rather than any precise number. *Hernandez v. Mendoza,* 199 Cal.App.3d 721, 727–728 (1988). Further, in *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1041-1045 (2016), the Supreme Court approved the use of representative sampling to establish off-the-clock donning and doffing time when the employer failed to record the compensable time as required by law. *Id.* at 1046-1049. Like *Tyson*, Defendant has failed to keep records of the time employees spend passing through security screening. Like the employer in *Tyson,* FedEx will likely argue that variations in time spent through security screening prohibits certification. But as made clear in *Tyson,* often a representative sample is the only practicable means to collect and present relevant data to establish liability or damages, especially when the evidentiary gap is caused by the employer's failure to properly record the compensable time. *Tyson Foods, Inc.,* 136 S. Ct. at 1046-1047. In addition, FedEx

contends it is able to estimate the amount of time it takes for the employees to go through the Security Screening and it cannot argue that it is impossible to estimate the time. And as in *Tyson,* Plaintiff retained an expert to conduct a study based on a sample insisted on by Defendant, to establish additional evidence based on Defendant's failure to keep records required by California law.

For the unpaid wage subclass, the liability questions focus on whether, Defendant failed to compensate the class members for all worked hours due to the mandatory "off-the-clock" Security Screening and the damages will be ascertainable from Defendant's records and expert testimony. (Roberts Decl. ¶¶32-68.)

For the meal and rest period subclasses, the liability questions focus on whether, Defendant failed to provide legally compliant meal and rest periods by impeding or discouraging breaks with its mandatory Security Screening process and the damages will be ascertainable from Defendant's time and pay records identifying each qualifying shift, applicable hourly rate and expert testimony. (Roberts Decl. ¶¶69-86.)

If Wage Statement Subclass prevails, damages will be proven by multiplying the statutory penalties allowable under Labor Code §226 times the total pay periods each class member was injured. (Roberts Decl. ¶¶87-88.)

Finally, if the Final Pay Subclass prevails, damages will be proven by multiplying each employees' applicable hourly rate by 8, then by 30 to be able to calculate the damages pursuant to Labor Code Section 203.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully request the Court certify the classes under Fed. R. Civ. P. Rule 23, appoint Plaintiff as class representative, appoint Lavi & Ebrahimian, LLP as class counsel, and provide that a notice be sent to the proposed class forthwith.

Dated: July 19, 2021                    By:   /s/ Jordan D. Bello
                                        Joseph Lavi, Esq.
                                        Attorneys for PLAINTIFF
                                        ERNEST CUADRA and Other Class Members

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION