Case 2:20-cv-10719-JFW-SK Document 97 Filed 08/02/21 Page 1 of 16 Page ID #:4701

Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
jbello@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Attorneys for PLAINTIFF
ERNEST CUADRA on behalf of himself and others similarly situated.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST CUADRA on behalf of himself and others similarly situated.<br><br>PLAINTIFF,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., et al.,<br><br>DEFENDANTS. | Case No.: 2:20-cv-10719-JFW (SKx)<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 16, 2021<br>Time: 1:30 p.m.<br>Courtroom: 7A<br><br>Judge: Hon. John F. Walter |

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## **TABLE OF CONTENTS**

I.  To Argue Against Certification, Defendant Misconstrues The Class And Points To Locations Which Were Not Intended To Be Part Of The Class ................................................................................................................ 1

II. Defendant Had A Legal Duty To record Security Screening Time And Its Failure To Do So Permits Imprecise Evidence And Representative Sampling To Establish The Amount Of Security Screening Time At Issue .............................. 6

III. Common Questions Predominate for the Unpaid Security Screening Class ..................................................................................................................... 7

    A.    Pre-September 29, 2019 Security Class ..................................................... 7

    B.    Post-September 29, 2019 Security Class .................................................... 9

    C.    Proposed Overtime Security check subclass ............................................ 9

    D.    Plaintiff's Impeded and Discouraged Meal and Rest Classes Should Be Certified ................................................................................... 11

    E.    Plaintiff's Derivative Claims Should Be Certified ................................. 12

    F.    Common Evidence Establishes Who Was Injured ................................. 12

IV. Conclusion ................................................................................................ 12

# TABLE OF AUTHORITIES

**Pages**

### Federal Cases

*Hamilton v. Wal-Mart Stores, Inc.*,
   No. ED CV 17-01415-AB (KKx), 2018 U.S. LEXIS 1682 (C.D. Cal. Aug, 21, 2018) .................................................................................................. 11

*Hubbs v. Big Lots, Stores, Inc.*,
   2017 U.S. Dist. LEXIS 85265 (C.D. Cal. May 23, 2017) ............................... 7

*Lao v. H&M Hennes & Mauritz, L.P.*
   2019 U.S. Dist. LEXIS 222542 (N.D. Cal. Dec. 30, 2019) ......................... 7, 8

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   311 F.R.D. 590 (C.D. Cal. Nov. 16, 2015) ...................................................... 8

*Ogiamien v. Nordstrom, Inc.*,
   2015 U.S. Dist. LEXIS 22128 (C.D. Cal. Feb. 24, 9th Cir. 2021) ................... 7

*Quinlan v. Macy's Corp. Servs., Inc.*,
   2013 U.S. Dist. LEXIS 164724 (C.D. Cal. Aug. 22, 2013) ............................. 7

*Rai v. Santa Clara Valley Transportation Authority*
   308 F.R.D. 245 (N.D. Cal. 2015) ..................................................................... 8

*Rodriguez v. Nike Retail Servs.*,
   928 F.3d 810 (9th Cir. 2019) ............................................................................ 4

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
   209 F.R.D. 159 (C.D. Cal. 2002) ................................................................... 10

*Trevino v. Golden State FC, LLC*
   2021 U.S. Dist. LEXIS 107533 (E.D. Cal. June 7, 2021) ............................... 8

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................ 7, 9

**State Cases**

*Frlekin v. Apple, Inc.,*
  8 Cal.5th 1038 (2020)..........................................................................................1, 6

*Furry v. East Bay Publishing, LLC,*
  30 Cal.App.5th 1072 (2018)........................................................................................6

*Troester v. Starbucks Corp.,*
  5 Cal.5th 829 (2018)....................................................................................................4

**Statutes**

Cal. Lab. Code
  § 510(a)..........................................................................................................................9
  § 1174(d) ......................................................................................................................6

**Rules and Regulations**

I.W.C. Wage Order 9
  §3(A)..............................................................................................................................9
  §7(A)(3).........................................................................................................................6

## I. To Argue Against Certification, Defendant Misconstrues The Class And Points To Locations Which Were Not Intended To Be Part Of The Class

From the outset of its Motion, Defendant misconstrues Plaintiff's theory of liability and the class members who this lawsuit is limited to and attempts to muddy the waters by including locations which did not have security screening and employees as class members, who Defendant did not require to pass through security screening.

Defendant argues that it did not have a common policy requiring all facilities to implement security screening, just that Defendant allowed each facility to implement security screening. (Dkt. 95-1 pp. 8-9.) This is merely an attempt at misdirection.

Plaintiff does not allege that Defendant requires every non-exempt warehouse employee to pass through security screening or that all facilities require security screening. (Dkt. 73-1 p. 8.) Plaintiff's class has always been limited to those California facilities that required employees to pass through security screening whenever they were to enter or leave the facility during the time period the requirements were in place[1]. And as already set forth in Plaintiff's motion, for those facilities which chose to employ mandatory security screening through use of third-party security, Defendant's security screenings policies (Policy-018, SEC 306, and Security Post Orders) governed and provided the methods of security and makes clear that failure to comply with mandatory security screening will result in discipline. (Dkt. 73-1 pp. 8-10.)

---

[1] Plaintiff's complaint expressly states the California facilities which this lawsuit applies to: "Defendants operate warehouse locations in California [that a]t times during the four years prior to the filing of the Complaint, DEFENDANTS required Plaintiff and other warehouse employees to go through security screening at the beginning of their shift, any time they left the premise during meal or rest breaks or returned from leaving the premises during meal or rest breaks, and at the end of their shift." (Dkt. 1-1 pp. 6-11 ¶¶11, 15, 19, 23; Dkt. 1-1 pp. 12-13 ¶27 (limiting classes to non-exempt warehouse employees required to pass through mandatory security checks).) This limitation is obvious because the fact that Defendant requires the employee to pass through security is what creates the control over the employee which renders the time compensable. 8 Cal. Code Regs. § 11090, subd. (2)(G), (4)(B) (hereafter "Wage Order 9) (requiring payment for all "hours worked" which means time an employee is subject to control of an employer); *Frlekin v. Apple, Inc.,* 8 Cal.5th 1038, 1053-1057 (2020) (*mandatory* security searches and wait time on employer's premises constitute compensable "hours worked").

Contrary to Defendant's attempts to misconstrue the class, Plaintiff's class definitions were never intended to include those employees working at facilities which did not require non-exempt warehouse employees to pass through security to enter or leave the facility and was not intended to apply to time periods a facility did not require non-exempt warehouse employees to pass through security to enter or leave the facility. Further, as Defendant is aware, Plaintiff has intended that the class be limited to those facilities which use third-party security personnel. (Dkt. 74-1 p. 9-10 (PMQ on Security Screening' limited "to facilities that have a security screening process which is also monitored by security personnel" and excluding other facilities.)

To clarify this obvious point, which Defendant has apparently ignored to base its Opposition, Plaintiff would amend all class definitions set forth at Dkt. 73-1 pp. 7-8, so that the phrase "at any facility that had a Security Screening process" is replaced with "who FedEx Ground package System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility."

For example, the definition for the Pre-September 29, 2019, Security Class would be: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. *who FedEx Ground Package System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility* any time between March 6, 2019, and September 28, 2019." The amended definitions eliminate the "material differences" which Defendant has manufactured by including facilities which were not intended to be part of the class. For example, Defendant argues that for some facilities "there may be no security screening depending on what entrance is used" identifying locations 7, 13, and 21. (Dkt. 95-1 p. 10.) But this argument seeks to include employees *who are not part of the class* because Defendant did not require those employees to go through security screening to enter and leave the facility. Defendant cites the declaration of Shea Winston and Ashlee Owens for support (Dkt. 95-1 p. 10), but Shea Winston acknowledges that some locations have a separate entrance which specific non-exempt employees such as "office administrators" may use which does not include a security screening process. (Dkt. 88-1 ¶10.) Ashlee Owens acknowledges that she is an "office

administrator" and is not required to go through security while other employees, like package handlers, do. (Dkt. 93-5 ¶¶2, 4.) These office administrators are not class members because they only pass-through security screening if they *voluntarily* submit themselves to the security and are not class members.

Defendant also cites declarations from four employees from Location 21, *who all testify that there is no mandatory security at Location 21*. (Dkt. 95-1 p. 10 citing CE8 Amato ¶¶4-5, CE11 Ariega ¶¶4-5, CE37 Guerrero ¶¶4-5, CE45 Lacuzong ¶¶4-5.) If Defendant permits non-exempt employees to enter and leave Location 21 through entrances and exits which Defendant does not require contract-manned security screening, then employees from Location 21 are not class members.

Defendant argues that for some facilities "[t]here may be no security screening if employees arrive to work one or two minutes late," citing declarations from employees for Location 20 which has occasional screening by management but only upon entering the facility. Again, Defendant relies on testimony of employees for Location 20 who make clear employees of Location 20 are not class members. These employees, including the Senior Manager[2], note that at Location 20, there are no contract security services at that location, that "there is no formal process in place about when or how to monitor the metal detector," that "it is … up to employees to be responsible for themselves, or self-check," and that there is no requirement for security screening when employees leave the facility. (Dkt. 95-1 p. 10 fn. 14 citing CE72 ¶¶2-3; *see* Dkts. 90-10, 91-4, 92-6 (employees acknowledging generally no security when entering and never when leaving facility).) Thus, these are not class members although Defendant seeks to sweep them in to challenge certification.

Defendant also argues that some facilities did not have security screening during the class period or only had it during a portion of the class period and argues this is a "material difference" between facilities. (Dkt. 95-1 p. 11.) Again, if a facility did not require employees to pass through security in order to enter and leave the facility, then

---

[2] Senior Managers of a location/facility, oversee the facility including any security at the facility. (¶2 of Dkts. 94-3 through 94-7 (Senior Managers noting Senior Manager duties includes being aware of and overseeing security procedures at a worksite).)

during those time periods, the employees were not class members. Defendant's personnel, including facility Senior Managers, know when and what security was in place at each facility during the class period. (*See* ¶2 of Dkts. 94-3 through 94-7.)

Defendant argues that "there may be no security screening on some shifts" citing to the Declaration of Jesse Arensdorf, the Senior Manager of Station #2, who notes that prior to September 2020, there was no security screening and after September 2020, security screening is limited to 3:00 a.m. and 11:00 a.m. (Dkt. 95-1 p. 10) Based on the class definition, only those employees whose entire shift fell within 3:00 a.m. and 11:00 a.m., i.e., required to pass though contract security manned security to enter and leave the facility, would be class members.

Defendant argues that there may be "no security screening" based on what employees bring to work. (Dkt. 95-1 p. 11.) However, this is intentional misdirection. Regardless of what they bring, *employees are still subject to security screening*. Defendant cites the Declarations of Emmanuel Flores and Greg Gonzalez for support of its "no security screening" claim (Dkt. 95-1 p. 11 fn. 16), but these employees note that regardless of what they bring, the employees are required to pass through mandatory security screening, empty pockets, etc. which takes minimum 13 to 55 seconds each day to enter and exit. (Dkt. 91-9 ¶¶5, 8 (noting at minimum takes a few seconds to walk without bag and 45 seconds with a bag for entry and 5-10 seconds to exit), Dkt. 92-2 ¶¶5, 8 (ten seconds to enter and a few seconds to exit).) Thus, Defendant's actual contention is that the time passing through security is de minimis, but the California Supreme Court and Ninth Circuit have held that the the de minimis doctrine does not apply to on-premises regularly recurring activities such as mandatory searches at issue here. *Troester v. Starbucks*, 5 Cal.5th 829, 837-849 (2018); *Rodriguez v. Nike Retail Servs.*, 928 F.3d 810, 814-818 (9th Cir. 2019). The de minimis argument also raises common questions as addressed below.

Defendant argues that there may be "no security screening" depending on whether the random screening technology[3] gives a green or red indicator after pushing a button.

---

[3] Defendant has noted in discovery that the random screening technology is only in place at 10 locations. (Bello Decl. ¶3.)

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
4

(Dkt. 95-1 p. 11.) However, as acknowledged by Defendant's PMQ and in the declarations cited by Defendant, employees are always screened upon entry and the random screening occurs only when leaving. (Bello Decl. Ex. 26 p. 98:11-18; ¶¶5, 8 CE 12-13, 21-22, 31, 33, 36, 48, 52 (entry can take 5 to 45 seconds and exit can be seconds up to 60 seconds).) Thus, these employees always have to pass through security each day regardless of getting a "green" light and Defendant's real contention is that screening can take seconds which Defendant contends is de minimis.

As set forth above, Defendant's arguments about material differences in security screening has no merit. When the intended class definition is used, Defendant's reliance on outlier facilities and employees who are not required to pass through security screening do not apply. Thus, as set forth in Plaintiff's motion at pp. 3-7, Defendant's PMQ testified that for the locations employing mandatory security governed by contract security, hourly non-exempt employees are required to go through Security Screening procedures every time they enter and exit a screening facility and that they could be disciplined if they refuse. Defendant's attempt to undermine its PMQ deposition and policies by referencing declarations of employees that are not even part of the class should be ignored.

In addition, Defendant's argument regarding the amount of time security screening takes on a daily basis (based on what an employee brings or the random screening technology) is really a de minimis argument which raises common issues.

Defendant attacks Plaintiff's estimate of security screening time and attempts to show it takes very little time by cherry-picking language from and citing to declarations of which *a significant number are from employees who work at locations which they are not even subject to security screening,* i.e., are not class members and work at facilities which do not employ class members. (Dkt. 95-1 pp. 9-10 citing CE14-15, 19, 28, 30, 42, 44, 63 (employees not subject to security screening).) Employees generally note that entering and leaving for security screening often reach 30 to 60 seconds daily. (¶¶5, 7 and 8 for Dkts. 91-1, 90-3, 93-5, 92-4, 92-7, 90-6, 93-12, 90-9.) In addition, despite having access to all employees, Defendant produces two declarations from Plaintiff's location and neither of employees are hourly warehouse workers like

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
5

Plaintiff. (Dkt. 92-1 ¶¶2-3 (Senior Operations Administrator); Dkt. 94-7 ¶¶2-3 (Senior Manager.) And all declarations are from current employees.

## II. Defendant Had A Legal Duty To record Security Screening Time And Its Failure To Do So Permits Imprecise Evidence And Representative Sampling To Establish The Amount Of Security Screening Time At Issue

Defendant misconstrues Plaintiff's statement that Defendant has the ability to track time employees pass through security screening and noting that some locations have card readers which can record employees' time swipes. (Dkt. 95-1 p. 11.) Plaintiff is aware that Defendant does not keep records of security screening time as admitted by Defendant. (Dkt. 95-1 pp. 6-7.) Defendant misses the point.

Plaintiff notes that Defendant had card readers at locations which could track employees entering and leaving areas for the purpose of noting that Defendant has the technology and ability to install card readers to record the time employees pass through security screening, but has not done so. (*See* Dkt. 88-7 ¶¶8-10.) Defendant could install ID card readers at its locations that require security screening (or multiple ID card readers at busy locations) and instruct employees to swipe before lining up for security screening and after exiting security screening. There is no merit to Defendant's contention that it is not possible for Defendant to use ID card readers to record employees' security screening and wait-time because the line may have different lengths and would require the location of the card reader to move. (Dkt. 95-1 p. 7.)

In fact, the law requires that Defendant record all hours worked. Cal. Lab. Code §1174(d) (employer must keep "payroll records showing the hours worked daily by …. employees"); IWC Wage Order 9 §7(A)(3), (5) (employer must keep accurate time records when employee begins and ends each work period and hours worked); *Frlekin, 8 Cal.5th at 1051-1057* ("hours worked" includes time employees wait for and pass-through mandatory security searches).

Pursuant to California law, Defendant's failure in its legal duty to keep records of employees' hours worked permits the use of imprecise evidence to establish the amount of time worked. *Furry v. East Bay Publishing, LLC,* 30 Cal.App.5th 1072, 1079 (2018). As noted in the Motion, the Supreme Court has considered the issue of when an

employer fails to keep records of hours worked in relation to a unpaid wages claim and held that representative sampling could be used to establish off-the-clock donning and doffing time when the employer failed to record the compensable time as required by law. *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1046-1049 (2016).

**III. Common Questions Predominate for the Unpaid Security Screening Class**
    **A.    Pre-September 29, 2019 Security Class**

Defendant has not, cannot and does not dispute that it never compensated any of the Pre-September 29, 2019, Class Members for security screening. In fact, Defendant has ignored these class members almost entirety it its opposition. In the 10% sample data, there were 167,134 shifts that were never compensated even a penny for the security check process that took place during this subclass. (Dkt. 76 ¶49).  If this is extrapolated to the entire class period, it would amount to more than 1,600,000 shifts that FedEx did not even pay a penny to its employees.

Defendant argues there is no common proof regarding mandatory security screening, but as addressed above, those arguments are based on Defendant's attempt to include locations and class members which did not require employees to pass through security screening whenever they entered or left the facility. Defendant also cites denial of certification in security check cases which do not have relevance here. In *Hubbs v. Big Lots Stores, Inc.*, 2017 U.S. Dist. LEXIS 85265, at *25-26 (C.D. Cal. May 23, 2017), the court denied certification in a "bag check" cases because searches were not mandatory for employees who did not bring bags and numerous employees did not bring bags to work. Similarly, in *Ogiamien v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 22128, at *9-10 (C.D. Cal. Feb. 24, 9th Cir. 2021) and *Quinlan v. Macy's Corp. Servs., Inc.*, 2013 U.S. Dist. LEXIS 164724, an *10-13 (C.D. Cal. Aug. 22, 2013) certification was denied because searches were not mandatory, were random with some managers never doing searches, and only for employees with packages or bags.

Plaintiff's case is more like the recently decided case of *Lao v. H&M Hennes & Mauritz, L.P.,* 2019 U.S. Dist. LEXIS 222542, at *9-22, (N.D. Cal. Dec. 30, 2019) where the court certified a class of retail employees who were all required to submit at inspection prior to leaving the store. Like Defendant here, the employer, relying on

*Ogiamien* and *Quinlan,* argued that variances in the inspection process (whether having to tell a manager they were leaving, subject themselves to bag check, submit themselves to visual inspection, or submit themselves to security camera check) precludes commonality and predominance. *Id.* at *13-15. The court disregarded this contention because all class members were required at minimum to inform the manager they were leaving and submit to a visual inspection. *Id.*

Defendants required all employees, at locations implementing mandatory security searches, to pass through security screening regardless of what they bring to work. In addition, even for those employees at 10 locations with randomized technology screening used for screening employees leaving the facilities, all employees had to pass through non-random security screening to enter the building.

Defendant also cites *Trevino v. Golden State FC, LLC,* 2021 U.S. Dist. LEXIS 107533, at*42-47 (E.D. Cal. June 7, 2021), where the court denied certification as to the security screening class because the employer had a policy during peak seasons of sporadically "flushing" the lines and pushing employees through without any screening when the lines were too long. The court found that this sporadic time of not requiring security screening raised individual issues as to those employees who were flushed. *Id.* In reply, the plaintiff amended the class definition to address locations where metal detectors did not work, but did not amend to address the flushing issue.

Here, Defendant admits that no matter how long the security screening wait might get, Defendant has never had a policy to speed up the screening process if employees are waiting too long for the screening. (Dkt. 74-1 pp. 73-74 138:14-139:1.)

Defendant also argues that the de minimis doctrine undermines commonality, but the Ninth Circuit treats de minimis defenses to wage and hour litigation as raising common questions which do not defeat certification. *Lao,* at *17-19; *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 604, 618 (C.D. Cal. Nov. 16, 2015) (certifying class of retail employees subject to exit inspections); *Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 259 & n.93 (N.D. Cal. 2015).

As such, the court must grant class certification as to the Pre-September 29, 2019 Security Class.

### B. Post-September 28, 2019 Security Class

The same arguments set forth immediately above, apply to the Post-September 28, 2019 Class Members, and Defendants arguments that there is no common proof of mandatory security screening, that common proof does not exist, or that the de minimis doctrine defeats commonality. (Dkt. 95-1 pp. 16-20.)

In relation to Defendant's assertion that payments after September 28, 2019, raise difficulties to determine whether employees were underpaid (issues which do not exist for the Pre-September 28, 2019 Security Class because no wages were paid during that period), this issue exists due to Defendant failing to record the employees' security screening time as required by California law. In *Tyson Foods, Inc. v. Bouaphakeo,* the Supreme Court held that representative sampling could be used to establish off-the-clock donning and doffing time when the employer failed to record the compensable time as required by law. *Tyson Foods, Inc.,* 136 S. Ct. at 1046-49. The employees who were entitled to unpaid wages for donning and doffing were limited to those employees whose off-the-clock doffing time exceeded 40 hours for the workweek. *Id.* at 1049. The Court considered how the parties could determine which employees suffered injury, i.e., off-the-clock doffing time pushed the worked time over 40 hours. *Id.* The Court acknowledged the proposal that an average amount of unpaid donning and doffing time could be determined by the jury for the class members and then time records could be used to determine which employees worked more than 40 hours by adding the average time. *Id.* at 1049-50. Similarly here, the jury can determine based on representative sampling, the amount of security screening time for class members and then compare that amount to what the employee was paid to determine injury.

### C. Proposed Overtime Security check subclass

Defendant's undisputed flat sum payment also gives rise to another proposed subclass. Defendant admits that the flat sum payment since September 29, 2019, has been used to compensate the employees for the amount of time that it has taken the class members to go through the security check process. (Dkt. 74-2 at 79:2-11.) It is also undisputed that any overtime compensation paid to any employee must be paid at 1.5 times their regular rate of pay. Cal. Lab. Code §510(a); Wage Order 9 §3(A).

However, Defendant never paid any of the security wait time at the employee's overtime rate of pay regardless of whether they had already worked sufficient hours to constitute overtime. (Bello Decl. Ex. 27 196:13-197:11; Dkt. 76 ¶66-68.)

Since the Court may consider class definitions first raised in a plaintiff's reply brief (*[Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159,161 n. 1 (C.D. Cal. 2002)](#)*), Plaintiff proposes the following additional Post-September 28, 2019 Security Overtime subclass and its derivative claims:

a. **Post-September 28, 2019 Security Overtime Class**: "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. who FedEx Ground Package System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility any time between September 29, 2019, through the date of certification that worked more than 8 hours in a day and received a flat sum payment and/or 40 hours in a week and received a flat sum payment."

b. **Post-September 28, 2019 Security Overtime Wage Statement Class:** "All hourly non-exempt employees, excluding delivery or driver employees, employed by FedEx Ground Package System, Inc. who FedEx Ground Package System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility any time between September 29, 2019, through the date of certification that worked more than 8 hours in a day and received a flat sum payment and/or 40 hours in a week and received a flat sum payment."

c. **Post-September 28, 2019 Security Overtime Final Wage Class**: "All former hourly non-exempt employees employed by FedEx Ground Package System, Inc. who FedEx Ground Package System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility any time between September 29, 2019, through the date of certification that worked more than 8 hours in a day and received a flat sum payment and/or 40 hours in a week and received a flat sum payment."

The Court should grant certification as to each of the above Post September 28, 2019 Overtime Subclasses since it is purely a legal determination that will apply to all class members since Defendant paid the 1 minute security wait time pay for off the clock claim at the employees' base rate of pay rather than the employees overtime rate of pay. (Dkt. 74-2 at 25:20-23; 26:6-27:7; 27:20-25; 29:15-18; 30:5-11; Bello Decl.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
10

Ex. 27 196:13-197:11, Ex. 28 72:2-73:17.) Thus, the court's determination as to each of the following will be a legal issue which will be on class wide basis:

- Whether the Post-September 28, 2019 Security Overtime Class Members should have been paid at overtime rate of pay for the paid security wait time when they worked overtime or whether they should have been paid at the base rate. Court's determination of this issue, which is purely a legal issues does not require any individualized inquiry or analysis and will apply to each and every single class member.
- Whether the Post-September 28, 2019 Overtime Wage Statement Class Members' wage statements should have listed the paid security wait time at overtime rate of pay for the dates that the employees worked overtime or whether they should have been paid at the base rate. Court's determination of this issue, which is purely a legal issues does not require any individualized inquiry or analysis and will apply to each and every single class member.
- Whether the Post-September 28, 2019 Overtime Final Pay Class Members' are entitled to receive waiting time penalty since Defendant paid the security wait time at regular rate of pay instead of overtime rate of pay when the employees worked overtime. Court's determination of this issue, which is purely a legal issues does not require any individualized inquiry or analysis and will apply to each and every single class member.

### D. Plaintiff's Meal and Rest Classes Should Be Certified

**Impeded and Discouraged Meal and Rest:** Plaintiff's theory on these subclasses is based on a theory acknowledged in *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2018 U.S. Dist. LEXIS 168235, at *14-18, 36-37 (C.D. Cal. Aug. 21, 2018) that California law prohibits an employer from impeding or discouraging employees from taking off premises meal breaks, or similarly rest breaks, and that Defendant's requirement of security screening for those facilities which employed mandatory security impeded and discouraged meal and rest periods because it failed to relieve employees of all duties and reduced their meal and rest break time. (Dkt. 73-1 pp. 22-24, 25-26.) In defense, Defendant argues that Plaintiff has not established a uniform security screening policy. (Dkt. 95-1 pp. 25, 26-27.) However, as noted above, Plaintiff has established that Defendant required employees at facilities which employed mandatory security to pass through security screening during meals and rest breaks. Thus, the common issues are like *Lao* rather than *Trevino,* as set forth above. As set forth in *Hamilton,* the question of whether Defendant impeded employees

from taking off premises meal or rest breaks is an objective one decided by a jury and does not delve into individual employees' subjective feelings. Thus, it is certifiable.

### E. Plaintiff's Derivative Claims Should Be Certified

As noted in Plaintiff's motion, if the Court finds issues certifiable on the aforementioned claims, the associated subclass of former employees' claims for section 203 penalties and Labor Code section 226 penalties will be proven in the single-stroke.

### F. Common Evidence Establishes Who Was Injured And The Trial Is Management

Defendant argues that common evidence does not exist to determine who was injured. But as set forth above, there is no merit to this claim. For the Pre-September 29, 2019 Security Class, all employees had to pass through security screening and Defendant's declarations for employees that had mandatory security screening demonstrate that this process took some time, thus injury occurred. For the Post-September 29, 2019 Security Class, as noted above, Defendant's failure to record the time spent going through security permits reliance on representative estimates of the time which can be used in comparison to payroll records to determine whether employees were paid sufficient wages for all hours worked. The proposed overtime classes set forth above are based exclusively on payroll records which show whether the employee worked sufficient hours for entitlement to overtime and whether Defendant paid the security screening time at an overtime rate for that period. The impeded/discouraged meal and rest period classes include all class members if a jury finds that Defendant's security screening policy impeded/discouraged meal and rest periods. Thus, there are no issues with identifying injured employees.

## IV. Conclusion

Plaintiff respectfully request the Court certify the classes and subclasses, appoint Plaintiff as class representative, appoint Lavi & Ebrahimian, LLP as class counsel, and provide that a notice be sent to the proposed class forthwith.

Dated: August 2, 2021          By:  /s/ Jordan D. Bello
                                    Jordan D. Bello, Esq.