# EXHIBIT A

1  EVAN R. MOSES, CA Bar No. 198099
   evan.moses@ogletree.com
2  ALEXANDER M. CHEMERS, CA Bar No. 263726
   alexander.chemers@ogletree.com
3  MELIS ATALAY, CA Bar No. 301373
   melis.atalay@ogletree.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
6  Telephone:  213-239-9800
   Facsimile:   213-239-9045
7
   Attorneys for Defendant
8  FEDEX GROUND PACKAGE SYSTEM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST CUADRA, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; FEDEX, a business entity unknown; and DOES 1 to 100, Inclusive,<br><br>Defendants. | Case No. 2:20-cv-10719-JFW (SKx)<br><br>**DEFENDANT FEDEX GROUND PACKAGE SYSTEM, INC.'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:          August 16, 2021<br>Time:         1:30 p.m.<br>Place:         Courtroom 7A<br><br>Complaint Filed: December 3, 2019<br>Trial Date:          December 14, 2021<br>District Judge:    Hon. John F. Walter<br>                          Courtroom 7A, First St.<br>Magistrate Judge: Hon. Steve Kim<br>                          Courtroom 540, Roybal |

48075071_2.docx

Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
EXHIBIT A, PAGE 3

## I. INTRODUCTION AND RELEVANT BACKGROUND

Plaintiff Ernest Cuadra's ("Plaintiff") Reply completely reconstructs the ten subclasses that he proposed just two weeks prior in his Motion for Class Certification.

Plaintiff's original class definitions all hinge on employment at particular FedEx Ground facilities—"All hourly non-exempt employees . . . employed . . . at any facility that had a Security Screening process". *See* ECF 73-1, 2:16-3:20. In its Opposition, defendant FedEx Ground Package System, Inc. ("FXG") identified numerous categories of employees who work at facilities that "had a Security Screening process" but who are not required to undergo any screening based on myriad factors including job classification, shift worked, timeframe during the proposed class period, and so on. *See* ECF 84, 10:8-11:7.

Recognizing that his proposed class definitions sweep in uninjured parties, Plaintiff pivots on Reply. He now suggests that he "would amend" all class definitions so that the phrase "at any facility that had a Security Screening process" is replaced with "who FedEx Ground package [*sic*] System, Inc. required to pass through a contract security-manned Security Screening process when leaving and entering the facility."[1] ECF 97, 2:10-13.

Plaintiff's attempt to submit new class definitions at the reply stage must be rejected. He proposes trading in one set of evils (class definitions that are overbroad

---

[1] Plaintiff's Reply accuses FXG for intentionally "misconstrue[ing] Plaintiff's theory of liability . . . by including . . . employees as class members, who Defendant did not require to pass through security screening." (ECF 97:2-5.) According to Plaintiff, his proposed class definitions were "not intended to apply to time periods a facility did not require non-exempt employees to pass through security to enter or leave the facility [and f]urther, as Defendant is aware, Plaintiff has intended that the class be limited to those facilities which use third-party security personnel." *Id.* at 2:1-7.

This castigation is disingenuous. FXG based its Opposition on Plaintiff's own original class definitions, which tied membership to work at certain facilities. Plaintiff's original class definitions were obviously drawn too broadly and captured uninjured individuals, made apparent in his complete attempt to overhaul those definitions.

48075071_2.docx

1    Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
EXHIBIT A, PAGE 4

1  and include uninjured persons) for another set of evils (class definitions that are
2  unascertainable and vague).  As FXG showed in its Opposition and as Plaintiff failed
3  to address on reply, <u>FXG does not have a uniform policy requiring California non-</u>
4  <u>exempt employees to undergo security screens</u>, with each facility determining
5  <u>whether</u> to use a security process, <u>when</u> to implement screening, <u>who</u> undergoes
6  screening, <u>who</u> conducts the screening, and <u>what</u> any screening entails.  It is
7  therefore impossible to determine who was "required" to engage in a screen without
8  a highly-individualized examination of each facility, job classification, timeframe,
9  shift worked, and so on.  What's more, Plaintiff has failed to present any common
10 evidence that security checks resulted in uncompensated time; he cannot do so
11 because the process could take mere seconds or less and FXG has paid its California
12 non-exempt workforce millions of dollars for potential security check time.
13      Plaintiff's Reply also introduces three new proposed "Post-September 28,
14 2019 Overtime Security check" subclasses.  ECF 97, 9:22-10:14.  The Reply
15 suggests—without any substantiation—that this overtime theory is suitable because
16 FXG supposedly did not pay security check time at the employee's overtime rate of
17 pay.  Plaintiff is incorrect.  Along with the fatal issue that there is no collective way
18 to determine which employees were actually required to go through security and thus
19 owed any compensation, Plaintiff has not submitted any evidence that FXG did not
20 account for security payments when calculating and paying overtime.  Finally,
21 Plaintiff has no standing to represent a putative class of employees who worked since
22 September 28, 2019 because his employment with FXG ended May 15, 2019.
23      Plaintiff's last-ditch efforts to rework his proposed class definitions are too
24 little and too late.  Plaintiff has not identified any common evidence supporting his
25 theories of liability, and he cannot plead around this failure with amended class
26 definitions.  Plaintiff's motion for class certification should be denied.
27
28 / / /

48075071_2.docx

2    Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
**EXHIBIT A, PAGE 5**

## II.    THE "REQUIRED TO PASS" SUBCLASSES ARE UNSUITABLE FOR COLLECTIVE TREATMENT

Plaintiff's amended class definitions do not cure the numerous problems underlying his original ones. On Reply, Plaintiff suggests that certification is suitable for employees who "were required to pass through a contract security-manned Security Screening process when leaving and entering the facility." ECF 97, 2:10-13. Even with this proposed amendment, a critical problem remains: there is no way to determine which employees were required to pass through security without countless individualized inquiries. This is because FXG has no common policy or practice that requires any particular employee, job class, shift, or location to undergo security screen practice. Plaintiff's Reply once again relies on Policy-018, SEC 306 and Security Post Orders; <u>but none of these written standards actually require that any screening take place</u>. *See* ECF 62-4, 63 (Post Orders); ECF 62-5, 63 (SEC-306); ECF 62-6, 63 (Policy-018).

Moreover, FXG's Opposition presented substantial evidence that even if certain facilities use contract security services, that does not mean that all employees working at those facilities also engage in compensable security screens. *See* ECF 84, 5:8-6:7. For instance, there are some facilities which have numerous entrances; there is contract security at some of the entrances, but not others, which impacts whether employees may go through a screen. *See, e.g.*, ECF 88-1, Winston ¶ 10 ("That separate entrance that may be used by some non-exempt employees does not [have a] security screen process."). As another example, some locations may use contract security during some shifts, but not others. *See, e.g.*, ECF 94-3, Arensdorf ¶ 3 ("Because there is no contract security for the remainder of the day, employees working the second shift walk through an unmanned security screen area and do not engage in any screening process"). At other facilities, contract security was only used during certain portions of the proposed class periods. *See, e.g.*, *id*. Though presented with these critical liability issues on Opposition, Plaintiff's Reply fails to

1  explain how a factfinder could ever determine which employees were "required" to
2  undergo security screens.

3  The amended class definitions also fail to address the certification problems
4  posed by FXG's flat security check payments.  There is no liability to the putative
5  classes—even as amended—if FXG adequately compensated for the time it may
6  have taken to undergo security screens.  And Plaintiff has identified no common
7  evidence to resolve this key liability issue.  FXG does not track actual screening time
8  (assuming any occurs).  *See* ECF 84, 6:9-7:10.  It instead provides flat amounts to
9  cover the amount of time it may take employees to go through security, <u>regardless of
10 whether there are security check practices at the employee's work site.</u>  ECF 88-11,
11 Grabowski Dep. 25:20-23, 28:5-24.  Thus, a factfinder cannot determine which
12 employees may have unpaid wages without an examination of: (1) whether the
13 employee underwent a security check; (2) how long the security check took; and (3)
14 whether FXG's flat pay exceeded the amount of compensation owed for security
15 check time.  Plaintiff's Reply fails to explain how any common evidence can solve
16 these highly individualized issues.

17 Plaintiff's Reply also fails to explain how the amended class definitions
18 adequately address the numerous problems that FXG demonstrated with Plaintiff's
19 remaining subclasses.  *See* ECF 84, 17-22.  The Court should thus reject Plaintiff's
20 invitation to certify ten expansive subclasses capturing over 67,000 individuals with
21 no common glue holding Plaintiff's claims together.

22 **III.  THE NEW "OVERTIME" SUBCLASSES ARE UNSUITABLE FOR
23      COLLECTIVE TREATMENT**

24 Plaintiff has also failed to meet his burden to establish by a preponderance of
25 the evidence that the new "Post-September 28, 2019 Security Overtime" subclasses
26 are suitable for collective treatment.  At the outset, Plaintiff does not have standing
27 to pursue this claim.  His employment ended in May 2019, months before this
28 proposed class period begins.  ECF 88-8, Cuadra Dep. 34:22-35:6, 153:24-154:20.

48075071_2.docx

4                    Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
EXHIBIT A, PAGE 7

1  Plaintiff thus has no standing to challenge the payments' sufficiency.  *See, e.g.*,
2  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).
3       Next, these subclasses employ the same problematic definitional standard as
4  the other subclasses—"All hourly non-exempt employees . . . **required to pass**
5  **through a contract security-manned** Security Screening process when leaving and
6  entering the facility any time between September 29, 2019, . . . [who] received a flat
7  sum payment."  ECF 97, 2:10-13 (emphasis added).  Because Plaintiff has identified
8  no way to determine which employees were required to pass through security—and
9  cannot do so because there is no common policy or practice that so requires—this
10 theory also fails.
11      Third, Plaintiff has failed to identify any common evidence that can be used to
12 determine how long the security check process may have taken any employee, let
13 alone tens of thousands of employees.  He cannot do so because FXG has never
14 tracked the amount of time it may have taken employees.  *See* ECF 84, 6:9-7:10.
15 Plaintiff therefore has not identified any feasible way to determine how much
16 overtime may be owed to these new subclasses without a veritable parade of
17 individual witnesses to testify about their own daily experiences.
18      Fourth, Plaintiff's Reply fails to demonstrate that FXG ever had a common
19 policy or practice to not provide security payments at the overtime rate when owed.
20 Plaintiff's Reply instead proffers evidence in which: (1) Plaintiff's expert admitted
21 that he did not know whether the flat payment was accounted for in overtime
22 calculations (ECF 98-2, 197:12-25); (2) FXG's expert similarly testified that FXG
23 never told him what the payment was for (ECF 98-3, 72:17-20); and (3) Ms.
24 Grabowski did not provide testimony about whether SEC payment was factored into
25 overtime payments.  Not only has Plaintiff failed to introduce <u>common</u> evidence that
26 enables classwide resolution of the overtime payment claims, he has also not
27 proffered <u>any</u> evidence that FXG did not adjust the overtime hours to account for the
28 security check payments.  Blindly pointing to the fact that the security check

48075071_2.docx

5  Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
**EXHIBIT A, PAGE 8**

payments were themselves for flat amounts does not resolve the issue.

## IV. CONCLUSION

For the foregoing reasons, along with those submitted in FXG's Opposition (ECF 84), Plaintiff's Class Certification motion must be denied.

DATED: August 6, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Melis Atalay
    Evan R. Moses
    Alexander M. Chemers
    Melis Atalay
Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

48075071.2

48075071_2.docx

6   Case No. 2:20-cv-10719-JFW (SKx)
DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
EXHIBIT A, PAGE 9